WRIGHT, FINLAY & ZAK, LLP
T. Robert Finlay, Esq., SBN 167280
Jonathan D. Fink, Esq. SBN 110615
Magdalena D. Kozinska, Esq. SBN 258403
4665 MacArthur Court, Suite 280
Newport Beach, California 92660
Tel. (949) 477-5050; Fax (949) 477-9200

Attorneys for Defendants,
WELLS FARGO BANK, N.A., erroneously sued as WELLS FARGO HOME MORTGAGE,
INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN FOOS, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, INC.<br><br>    Defendant. | Case No.: 2:10-cv-02201-FCD-CMK<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: September 23, 2010<br>Time: 10:00 a.m.<br>Ctrm: 2<br><br>[Assigned to the Hon. Frank C. Damrell, Jr.]<br><br>Complaint filed: August 16, 2010 |

# TABLE OF CONTENTS

Page No.

I.  STATEMENT OF FACTS                                                      1

II. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF                          2

A.  Requirements for Injunctive Relief                                      2

    1.  The Entire Complaint is Barred Because Plaintiff Did not tender
        the Amounts Owed Under the Note and Deed of Trust                   5

    2.  Wells Fargo does Not Owe a Fiduciary Duty to Plaintiff              7

    3.  Wells Fargo was Not Negligent in its Dealings with Plaintiff        8

        i.   Negligence                                                     8

        ii   Negligence Per Se                                             9

    4.  The Agent: Common Law Fraud Cause of Action is Fatally
        Flawed                                                            10

    5.  The Claim for Breach of Implied Covenant of Good Faith and
        Fair Dealing Has No Basis In Fact or Law                          11

    6.  The Claim for Violation of TILA Is Barred Has no Basis in Fact
        or Law                                                            13

    7.  The Claim for Intentional Infliction of Emotional Distress is
        Fatally Flawed                                                    14

III. IF INJUNCTIVE RELIEF IS GRANTED, MOVING PARTY SHOULD
     BE REQUIRED TO POST A BOND IN THE MINIMUM AMOUNT
     OF $75,000.00                                                        16

IV. CONCLUSION                                                            17

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**Case**                                                                                       **Page No.**

*4 Miller & Starr, California Real Estate,*
    §9, 154, pp. 507-8 (2d Ed. 1989)                               6

*Abdallah v. United Savings Bank,*
    (1996) 43 Cal.App.4th 1101, 1109                            5

*Accord American Mortgage Network, Inc. v. Shelton,*
    *486 F.3d 815,* (4th Cir. 2007)                              6

*Allen v. Ramsay,*
    179 Cal.App.2d 843, 848, (1960)                           10

*Alliance for the Wild Rockies v. Cottrell,*
    2010 U.S. App. LEXIS 15537 at *10 (9th Cir. July 28, 2010)     3, 4

*Amoco Prod. Co. v. Village of Gambell,*
    480 U.S. 531, 542, 107 S.Ct. 1396, 1402 (1987)           2

*Arnolds Management Corp. v. Fisher* (1984),
    158 Cal.App.3d 575, 578-579                           6

*Bentajado v. Wells Fargo Bank, N.A.,*
    2009 WL 1702208 at *2 (N.D. Cal., June 17, 2009)         3

*Branch v. Homefed Bank,*
    6 Cal.App.4th 793, 800-01(1992)                       15

*Cal. Service Station and Auto. Repair Ass'n v. American Home Assurance Co.,*
    62 Cal.App.4th 1166, 1178 (1998)                      9

*Careau & Co. v. Security Pacific Bus. Credit, Inc.,*
    222 Cal.App.3d 1371, 1399, fn. 25 (1990)               7

*Christensen v. Superior Court,*
    54 Cal.3d 868, 903 (1991)                            14

*City of Angoon v. Marsh,*
    (9th Cir. 1984) 749 F.2d 1413, 1415                    2

*Continuum Co. v. Incepts, Inc.*
    873 F.2d 801, 803 (5th Cir. 1989)                     5, 16

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

*Davidson v. City of Westminster,*
32 Cal.3d 197, 209 (1982) ..... 14

*DiRosa v. Showa Denko K.K.,*
44 C.A.4th 799, 808 (1996) ..... 9

*Downey v. Humphreys,*
102 Cal.App.2d 323, 332 (1951) ..... 7

*Earnhardt v. Puerto Rico,*
691 F.2d 69, 71 (1st Cir. 1982) ..... 13

*Elxsi v. Kukje America Corp.* 672 F.Supp.,
1294, 1299 (N.D.CA 1987) ..... 11

*Erlich v. Menezes,*
21 Cal.4th 543, 555 (1999) ..... 15

*Fletcher v. Western Life Insurance Co.,*
10 Cal.App.3d 376, 397(1970) ..... 14

*FPCI RE-HAB 01 v. E & G Invest., Ltd.,*
(1989) 207 Cal.App.3d 1018, 1021 ..... 6

*Global Horizons, Inc. v. Dept. of Labor,*
(9th Cir. 2007) 510 F.3d 1054, 1057 ..... 2, 4

*Holmberg v. Armbrecht,*
27 U.S. 392, 397 (1946) ..... 13

*Jessen v. Keystone Savings & Loan Assn,*
(1983) 142 Cal.App.3d 454, 459 ..... 3

*Johnson v. Honeywell Intern. Inc.,*
179 Cal.App.4th 549, 555 (2009) ..... 9

*Karlsen v. American Savings & Loan Assoc.,*
(1971) 15 Cal.App.3d 112, 117 ..... 5, 6

*Kim v. Sumitomo Bank of California,*
17 Cal.App.4th 974 (1993) ..... 7

*King v. California,*
784 F.2d 910, 913-15 (9th Cir. 1986) ..... 13

-iii-

Ladd v. County of San Mateo,
  12 Cal.4th 913, 917 (1996)                                         8, 9

Lee v. Bank of America,
  218 Cal.App.3d 914, 920 (1990)                                     15

London v. Marco,
  (1951) 103 Cal.App.2d 450, 453                                     5

Maggio v. Gerard Freezer & Ice Co.,
  824 F.2d 123, 127 (1st Cir. 1987)                                  14

Mandrigues v. World Sav., Inc.
  2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009)                    3

Mazurek v. Armstrong,
  520 U.S. 968, 972 (1997)                                          2

Merenda v. Superior Court,
  3 Cal.App.4th 1, 8-11(1992)                                       15

Millard v. Biosources, Inc.,
  156 Cal.App.4th 1338, 1353, fn. 2 (2007)                          9

Mitsui Manufacturers Bank v. Superior Court,
  212 Cal.App.3d 726, 730-33 (1989)                                 12

Morse v. Crocker National Bank,
  42 Cal.App.3d 228, 232 (1983)                                     7

Nintendo v. Lewis Galoob Toys, Inc.,
  16 F.3d 1032, 1037 (9th Cir. 1994)                                5, 16

Nymark v. Heart Federal Savings & Loan Association,
  231 Cal.App.3d 1089, 1096 (1991)                                  7

Perati v. Atkinson,
  213 Cal.App.2d 472, 474 (1963)                                    15

Price v. Wells Fargo Bank,
  213 Cal.App.3d 465, 476 (1989)                                    7, 12

Quiroz v. Seventh Ave. Center,
  45 Cal.Rptr.3d 222 (App. 6 Dist. 2006)                            9

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Ross v. Creel Printing & Publishing Co., Inc.*
    100 Cal. App. 4th 736, 745 (2002)       15

*Salois v. The Dime Sav. Bank of N.Y.,*
    128 F.3d. 20, 25 (1st Cir. 1997)       13

*Scafindi v. Western Loan and Building Company,*
    72 Cal. Ap.2d 550, 553 (1946)       10

*Sierra-Bay Fed. Land Bank Assn. v. Superior Court,*
    227 Cal.App.3d 318, 333 (1991)       9

*Software Design & App. Ltd. v. Hoelter & Arnett, Inc.*
    56 Cal.Rptr.2d 756, 760       7

*Spencer v. DHI Mortgage Company, LTD,*
    642 F.Supp.2d 1153, 1161 (2009)       7

*Sutherland v. Barclays American/Mortgage Corp.,*
    53 Cal.App.4th 316, 317 (1997)       15

*Tarmann v. State Farm Mutual Auto Insurance Company,*
    Cal.App.4th 153, 157 (1991).       10

*Taylor v. Westly,*
    488 F.3d 1197, 1200 (9th Cir. 2007)       2

*Texas v. Seatrain Int'l, S.A*
    (5th Cir. 1975)       2

*Tina v. Countrywide Home Loans, Inc.,*
    2008 WL 3157455 at *2 (S.D. Cal., Aug. 5, 2008)       3

*Truck Drivers & Helpers Union v. NLR,*
    993 F.2d 990, 998(1st Cir. 1993)       13

*United States Cold Storage v. Great Western Savings & Loan Assoc.,*
    (1985) 165 Cal.App.3d 1214, 1222       5

*Wadleigh v. Phelps,*
    (1906) 149 Cal.627, 642, 643       5

*Wagner v. Benson,*
    101 Cal.App.3d 27, 34-35 (1980)       7

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Wallis v. Superior Court,*
    160 Cal.App.3d 1109, 1118 (1984)      11

*Winter v. NRDC, Inc.,*
    555 U.S. ___, 129 S.Ct. 365, 374 (2008)      2

*Woodson v. Winchester,*
    16 Cal.App. 472, 473 (1911)      10

*Yamamoto v. Bank of New York,*
    329 F.3d 1167, 1171-73 (9th Cir. 2003)      6

*Young v. Bank of America,*
    141 Cal.App.3d 108, 114 (1983)      15

**Other Authorities**      **Page No.**

California Civil Code § 2924c(e)      5

California Code of Civil Procedures §338(d)      11

222 Cal.App.3d at 1399      12

5 Witkin, California Procedure, Third Edition,
    Pleadings §662, pg 111      10

5 Witkin, Cal. Proc. Before Trial (4th ed. 1997),
    Pleading §668, pp.123-124      10, 11

15 U.S.C. § 1640(e); see FRCP,
    Rule 12(b)(6)      14

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

## I.    STATEMENT OF FACTS:

On or about January 29, 2007, Plaintiff Stephen Foos ("Plaintiff") obtained a loan from Wells Fargo Bank, N.A.,[1] ("Wells Fargo" or "Movant") for approximately $552,000.00 ("Loan") which was secured by a Deed of Trust ("DOT") recorded against the real property commonly known as 3115 Acanto Place, Redding, CA 96003 ("Property").[2] The recorded DOT shows the trustee as Fidelity National Title Insurance Company and Wells Fargo as the lender and beneficiary.

As Plaintiff defaulted on the Loan and failed to cure that default, duly noticed foreclosure proceedings were commenced against the Property. On October 8, 2009, First American LoanStar Trustee Services ("FALTS") caused a Notice of Default and Election to Sell Under Deed of Trust ("NOD") to be recorded.[3] According to the NOD, as of January 27, 2010, Plaintiff was $20,113.88 behind in payments on the Property.

On March 31, 2010, a document was recorded whereby Wells Fargo formally named FALTS as Substitute Trustee under the DOT.[4]

On April 13, 2010, Wells Fargo executed an Assignment of Deed of Trust, which granted all beneficial interests under the DOT to US Bank National Association, as Trustee for CSMC 2007-4.[5]

When Plaintiff still failed to cure his default, a Notice of Trustee's Sale was recorded by FALTS, setting the sale for May 25, 2010 at 11:00 p.m.[6] The Trustee's Sale has been postponed to September 24, 2010.

---

[1] Curiously Plaintiff does not sue Wells Fargo Bank, N.A. rather Plaintiff sues Wells Fargo Bank Home Mortgage, Inc. which no longer exists. Wells Fargo Home Mortgage, Inc. merged with Wells Fargo Bank, N.A. as of 4/30/04. Wells Fargo Home Mortgage (not an Inc.) is a division of Wells Fargo Bank, N.A.
[2] A true and correct copy of the Deed of Trust is attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit "1" and incorporated herein by reference.
[3] A true and correct copy of NOD is attached to the accompanying RJN as Exhibit "2" and incorporated herein by reference.
[4] A true and correct copy of Substitution is attached to the accompanying RJN as Exhibit "3" and incorporated herein by reference.
[5] A true and correct copy of Assignment is attached to the accompanying RJN as Exhibit "4" and incorporated herein by reference.
[6] A true and correct copy of the Notice of Trustee's Sale is attached to the accompanying RJN as Exhibit "5" and incorporated herein by reference.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1   This lawsuit was filed on August 16, 2010 along with a Petition for Temporary Injunction

2   for a Temporary ("TRO"). On August 17, 2010, this Court issued an Order denying the TRO

3   holding that Plaintiff failed to comply with requirements of Local Rule 231, specifically with

4   respect to notice.[7]

5   Also on August 16, 2010, Plaintiff filed Motion for Preliminary Injunction which is

6   currently set to be heard on September 23, 2010 and which Wells Fargo here opposes.

7   **II.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF**

8       **A.    Requirements for Injunctive Relief:**

9   An injunction is not a matter of right but rather one involving a balancing of the

10  competing equities.[8] The moving party has the burden of persuasion on an application for

    injunctive relief[9] and the elements required to be shown are:

11      1.    Probable success on the merits;

12      2.    The likelihood of irreparable harm to plaintiffs;

13      3.    The equities favor plaintiff; and

14      4.    Injunctive relief is in the public interest.[10]

15  Although there used to be an alternative, arguably lesser, standard, under *Taylor v.*

16  *Westly*,[11] it is unlikely that this alternative approach has survived the holding in *Winter v. NRDC,*

17  *Inc.*[12]

18  Examining the traditional test, Plaintiff fails on each of the elements.

19  First, there is <u>no</u> reasonable probability that Plaintiff could prevail against Wells Fargo on

20  *any* of his claims.[13] Some of the claims are so frivolous on their face (at least as applied to Wells

21  Fargo) that they arguably violate Plaintiff's obligations under FRCP Rule 11 and the rest are

    either clearly time-barred or lack *any* supporting declarations or other evidence to provide any

22  basis for evaluating the merits of Plaintiff's claims—merely uttering the words "substantial

23

---

24  [7] A true and correct copy of the 8/17/2010 Order is attached to the accompanying RJN as Exhibit "6" and
    incorporated herein by reference.

25  [8] *Amoco Prod. Co. v. Village of Gambell* 480 U.S. 531, 542, 107 S.Ct. 1396, 1402 (1987).
    [9] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (requiring movant to make "a clear showing"); *City of Angoon v.*

26  *Marsh*, (9th Cir. 1984) 749 F.2d 1413, 1415.
    [10] *Winter v. NRDC, Inc.*, 555 U.S. ___, 129 S.Ct. 365, 374 (2008); *Amoco, supra.*

27  [11] *Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007)
    [12] *Winter v. NRDC, Inc.*, 555 U.S. ___, 129 S.Ct. 365, 374 (2008).

28  [13] *Global Horizons, Inc. v. Dept. of Labor*, (9th Cir. 2007) 510 F.3d 1054, 1057; *Texas v. Seatrain Int'l, S.A.* (5th Cir.
    1975) : "One can not obtain a preliminary injunction if he clearly will not prevail on the merits."

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

likelihood plaintiff will prevail" as if they were a magic incantation will not suffice nor is it enough to state what Plaintiff *intends* to prove, he must provide actual evidence now if he hopes to obtain injunctive relief.[14]

In *Jessen v. Keystone Savings & Loan Assn.*, as in the present case, the plaintiffs sought a preliminary injunction to stop a trustee's sale of real property. The trial court denied injunctive relief, stating that:

> Trust deeds . . . are the lifeblood of the real estate industry and the investment industry . . . and if you can't depend upon the fact that you can foreclose under the thing when it is defaulted, because every time somebody raises a question, legitimate or illegitimate, regarding any part of the transaction, the whole thing would be tied up in litigation for years, nobody's going to be able to borrow money, and nobody's going to be able to build anything.[15]

The appellate court affirmed the denial of the injunction and further held that the fact that plaintiffs had not demonstrated a reasonable probability of success on the merits was sufficient, in and of itself, to justify denial of injunctive relief, stating: ". . . it is appropriate to deny an injunction where there is no showing of reasonable probability of success, even though the foreclosure will create irreparable harm, because there is no justification in delaying that harm where, although irreparable, it is also inevitable."[16]

Indeed, the Complaint leaves the reader baffled as to precisely what acts or omissions are being complained of, when they occurred, who is responsible for them and how and if Plaintiff has damaged thereby.

Second, the claim of irreparable harm is grossly overstated. While it is not disputed that the potential loss of one's home is a serious matter, the reasons *why* that home is being lost matter: "[W]hether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure."[17] Moreover, even under the sliding scale test utilized in the Ninth Circuit, irreparable harm alone will not suffice:[18] "Under this 'sliding scale,' a preliminary

---

[14] *Bentajado v. Wells Fargo Bank, N.A.*, 2009 WL 1702208 at *2 (N.D. Cal., June 17, 2009); *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 3157455 at *2 (S.D. Cal., Aug. 5, 2008).
[15] *Jessen v. Keystone Savings & Loan Assn.* (1983) 142 Cal.App.3d 454, 459.
[16] *Id.* at 459.
[17] *Mandrigues v. World Sav., Inc.*, 2009 WL 160213, at *3 (N.D. Cal. Jan. 20, 2009) (*citing Parker v. United States Dep't of Agriculture*, (6th Cir. 1989) 879 F.2d 1362, 1367-68).
[18] *Alliance for the Wild Rockies v. Cottrell*, 2010 U.S. App. LEXIS 15537 at *10 (9th Cir. July 28, 2010).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1    injunction may issue 'when a plaintiff demonstrates . . . that serious questions going to the merits
2    were raised and the balance of hardships tips sharply in the plaintiff's favor,' as long as the other
3    two *Winter* factors have also been met."[19] Thus, "[w]hen ... a party has not shown any chance of
4    success on the merits, no further determination of irreparable harm or balancing of hardships is
5    necessary."[20] However, here, Plaintiff has also failed to demonstrate any actual "serious issues"
6    exists—again mere conclusions are no substitute for declarations and evidence and the "verified"
7    complaint does not actually identify any wrongdoing by Wells Fargo, or anyone else.

8            Third, the equities favor Wells Fargo. Not only is Plaintiff seeking to obtain a free home
9    through this ruse (he is facing foreclosure because he cannot or will not repay the balances owed
10   on his loan) but Plaintiff blithely ignores the (intended) harm which will befall Wells Fargo were
11   an injunction to be granted. As noted, the stated intention of this action is to allow Plaintiff to
12   avoid repaying the loan while getting to keep the home it refinanced. The loan was made with
13   the express understanding that Plaintiff would either pay as agreed or the lender (or its
14   successors and assigns) would be entitled to foreclose on the Property. Now, Plaintiff seeks to
15   renege on the agreement and deprive Wells Fargo of both the bargained for income stream which
16   timely payments on the loan would have provided *and* of the value of the Property as security.
17   Certainly, this is a harm at least as severe as the threat of foreclosure to Plaintiff's home.

18           Fourth, the public interest is not served by allowing Plaintiff to get a free home and avoid
19   his legitimate debts, particularly where doing so would have severe, if not catastrophic effect on
20   numerous other businesses and the economy as a whole. If Plaintiff were to prevail on enjoining
21   this foreclosure on such flimsy grounds, it is no exaggeration to state that the ability of
22   prospective and existing homeowners (even those *willing to pay their mortgages*) to obtain
23   financing at reasonable rates and terms would be greatly diminished—the risk to lenders of
24   losing their security would simply be too great.

25           FRCP Rule 65(c) requires as a condition of any injunction that the party obtaining an
26   injunction post a bond in an amount "the court deems proper for the payment of such costs and

27

28   [19] Id. at *18-19 [Emphasis added].
     [20] *Global Horizons, Inc., supra*, at 1058.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1 damages as may be incurred or suffered by any party who is found to have been wrongfully
2 enjoined." In light of the foregoing, were the Court to be inclined to grant injunctive relief here,
3 the amount of the bond which ought to be required in order to obtain the benefit of the injunction
4 would need to considerable—possibly even in the amount of the unpaid balance of each of the
5 loans in question.[21] It is no answer for Plaintiff to insist that the property will still be there when
6 he loses.[22]

## 1. The Entire Complaint is Barred Because Plaintiff Did Not Tender the Amounts Owed Under the Note and Deed of Trust:

An injunction is an equitable remedy, and the party seeking it must come into court
prepared to do equity and with "clean hands" with respect to the matter in equity.[23] Under Civil
Code § 2924c, Plaintiff had a simple remedy if he wished to stop the foreclosure sale from going
forward: he could have tendered the amount in default plus costs incurred and reinstate the
Loan. He failed and refused to do so. As of May 20, 2010, when he passed the threshold of five
days prior to the initially scheduled sale date [May 25, 2010], he was no longer entitled to do that
and now must pay the full indebtedness on the loan as a condition of stopping the sale.[24]
Thereafter, a debtor only has a *right to redeem* his property under Civil Code §§ 2903 and 2905.
Basically, in order to redeem, Plaintiff would have to pay the entire debt plus costs, other than
just past arrearages.[25]

Absent a tender of the undisputed amounts, Plaintiff cannot invoke the court's equitable
powers to stop the sale.[26] As the Court of Appeals explained in *F.P.B.I. Rehab 01 v. E&G
Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021:

> This rule...is based upon the equitable maxim that a court of equity will not order
> a useful act performed....if plaintiffs could not have redeemed the property had

---

[21] The bond is designed to provide a ready source of recovery for those damages without regard to the moving party's solvency. *Continuum Co. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir. 1989); *Nintendo v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1037 (9th Cir. 1994).
[22] Even putting to the side the obvious risks of declining home prices and failures to maintain.
[23] *See London v. Marco* (1951) 103 Cal.App.2d 450, 453.
[24] Civil Code § 2924c(e).
[25] *Wadleigh v. Phelps* (1906) 149 Cal.627, 642, 643.
[26] *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; *see also, United States Cold Storage v. Great Western Savings & Loan Assoc.* (1985) 165 Cal.App.3d 1214, 1222; *Karlsen v. American Savings & Loan Assoc.* (1971) 15 Cal.App.3d 112, 117.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.

Thus, as a condition precedent to any action challenging a foreclosure, the borrower must tender or offer to tender a sum sufficient to cure the default or redeem the property (depending upon the stage of the foreclosure proceedings).[27] The reasoning behind this rule is that a court of equity will not order the performance of a useless act.[28] In other words, what would be the point of stopping a foreclosure if the end result were that Plaintiff would simply go back into default and the foreclosure process resumed? No tender has been made here nor has Plaintiff indicated that he has the present ability to make any such tender.

Any tender must be made in *good faith*; the party making the tender must have the *ability to perform* at the time of the tender; and the tender must have been *unconditional. See Civil Code* §§ 1486 (full performance), 1493 (good faith), 1494 (unconditional) and 1495 (offeror must have ability to perform).[29] This tender requirement has been extended to apply to "any cause of action" arising from an alleged improper foreclosure.[30] Thus, tendering of payments becomes the cornerstone to such actions.

Similarly, the TILA claim is also barred absent Plaintiff's showing an ability and willingness to tender the amounts he obtained from Wells Fargo.[31]

Here, Plaintiff does not allege that he (or anyone else) tendered the full amounts owed under the Loan. Accordingly, Plaintiff cannot stop the foreclosure sale, or maintain any claim arising therefrom.

---

[27] *Karlsen*, supra., at p. 117 (judgment on the pleadings granted); *Arnolds Management Corp. v. Fisher* (1984) 158 Cal.App.3d 575, 578-579; see also, 4 Miller & Starr, California Real Estate, §9, 154, pp. 507-8 (2d Ed. 1989) and authorities cited therein.
[28] *Karlsen, supra,* at 118; *FPCI RE-HAB 01 v. E & G Invest., Ltd.,* (1989) 207 Cal.App.3d 1018, 1021.
[29] *See also* Miller & Starr, *supra.*
[30] *Karlsen, supra; Arnolds Management Corp., supra.*
[31] *Yamamoto v. Bank of New York,* 329 F.3d 1167, 1171-73 (9th Cir. 2003), holding that, while courts have no discretion to *alter* TILA's substantive provisions, they retain broad discretion to do so as to its procedural provisions, and that a court could require that a the mortgagee's security interest did not automatically become void upon notice of rescission and that a mortgagor could be required to show proof of ability to repay the loan before rescission would be ordered. *Accord American Mortgage Network, Inc. v. Shelton, 486 F.3d 815,* (4th Cir. 2007)(noting that Yamamoto represents the majority view).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1 **2.** **Wells Fargo does Not Owe a Fiduciary Duty to Plaintiff:**

2 In the First Cause of Action for Breach of Fiduciary, Plaintiff claims that "Defendants

3 Agent, appraiser, trustee, Lender, et al, and each of them owed Petitioner a fiduciary duty of

4 care with respect to the mortgage loan transactions and related title activities involving the Trust

5 Property."[32]

6 However, it is well-established that a lender does not owe any fiduciary duty to its

7 borrower. "[A] financial institution owes no duty of care to a borrower when the institution's

8 involvement in the loan transaction does not exceed the...conventional role as a mere lender of

9 money...."[33] According to the Court in *Price v. Wells Fargo Bank*:

10 It has long been regarded as 'axiomatic that the relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor.'[34] 'A debt is not
11 a trust and there is not a fiduciary relation between debtor and creditor as such.'[35] The same principle should apply with even greater clarity to the relationship between a bank
12 and its loan customers.[36]

13 California courts have determined that the relationship of a bank-commercial borrower

14 does not constitute a special relationship.[37] The court in *Kim v. Sumitomo Bank of California*

15 upheld the concept that a lender owes no fiduciary duty to a borrower.[38] In California, the law is

16 well established that a bank or lender has no fiduciary duty to a borrower when a borrower

17 obtains a loan through the course of an ordinary lender-borrower relationship.[39] Lenders are not

18 even under any duty to explain the terms of loan documents to borrowers who sign them without

19 reading.[40] Furthermore, lenders do not have a duty "to determine the borrower's ability to repay

20 the loan...The lender's efforts to determine the creditworthiness and ability to repay by a

21 borrower are for the lender's protection, not the borrowers."[41]

22

23

[32] See, Complaint, pg. 26, ll 17-19.
24 [33] *Wagner v. Benson,* 101 Cal.App.3d 27, 34-35 (1980); *Nymark v. Heart Federal Savings & Loan Association,* 231 Cal.App.3d 1089, 1096 (1991).
25 [34] *Morse v. Crocker National Bank,*142 Cal.App.3d 228, 232 (1983).
[35] *Downey v. Humphreys,* 102 Cal.App.2d 323, 332 (1951).
26 [36] *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476 (1989).
[37] *Careau & Co. v. Security Pacific Bus. Credit, Inc.,* 222 Cal.App.3d 1371, 1399, fn. 25 (1990).
27 [38] *Kim v. Sumitomo Bank of California,* 17 Cal.App.4th 974 (1993).
[39] *Software Design & App. Ltd. v. Hoelter & Arnett, Inc., 56 Cal.Rptr.2d 756, 760.*
28 [40] *Kim v. Sumitomo Bank of California,*17 Cal.App.4th 974, 981(1993).
[41]*Spencer v. DHI Mortgage Company, LTD,* 642 F.Supp.2d 1153, 1161 (2009).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1  The relationship between Wells Fargo and Plaintiff, at least as alleged in the Complaint,

2  was nothing more, than a simple lender-borrower relationship. Nothing else is, or can be,

3  alleged and, thus Plaintiff's claim has no merits.

**3.  Wells Fargo was Not Negligent in its Dealings with Plaintiff:**

**1. *Negligence***

6  To plead a negligence claim, Plaintiff must allege (1) duty, (2) breach, (3) causation, and

7  (4) damages.[42] In the instant action, not only has Plaintiff not identified or established any of the

8  elements required to maintain this cause of action against Wells Fargo but there are no specific

9  allegations made against Wells Fargo anywhere in the entire Complaint.[43] Thus, Plaintiff's

10  claim for Negligence has no merits as the Complaint is fatally uncertain.

11  A negligence claim presumes a duty but no duty on the part of Wells Fargo is alleged in

12  the Complaint and the general rule, as explained above, is that a lender has no duty to its

13  borrowers. Moreover, there are no specific allegations as to what acts constitute the negligence

14  or who committed them, just vague mutterings of neglect.

15  In any event, any negligence claim must fail as, pursuant to Code of Civil Procedure §

16  335.1, an action for injury caused by the neglect of another must be brought within two years of

17  the injury. Plaintiff claims that "Defendants knew or in the exercise of reasonable care should

18  have known that the loan transactions involving Petitioner and others similarly situated were

19  defective, unlawful, violative of federal and state laws and regulations, and would subject

20  Petitioner to economic and non-economic harm and other detriment."[44] In other words, his

21  injury appears to be in the making of the loan. Since Plaintiff did not file this action until August

22  16, 2010, over three years after he obtained the loan from Wells Fargo in January 2007, the claim

23  of negligence is clearly barred by the statute of limitations and thus will not success on the

24  merits.

25

---

26  [42] *Ladd v. County of San Mateo* 12 Cal.4th 913, 917 (1996).

27  [43] BofA is in fact only mentioned three times in the entire Complaint: in the Caption, the "Parties" section and the "Carefully Crafted Criminal Connivance" section where Plaintiff states that "Bank of America, N.A...swooped in and convinced Americans to sell their homes, get out of their safe mortgage agreements and speculate with the

28  equity they had gained by purchasing homes they could not afford."
[44] See, Complaint, pg 26, ll 14-17.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1  ## 2. *Negligence Per Se*

2      Evidence Code § 669 creates a presumption of negligence where a defendant "(1) ...

3  violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately

4  caused death or injury to person or property; (3) The death or injury resulted from an occurrence

5  of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The

6  person suffering the death or the injury to his person or property was one of the class of persons

7  for whose protection the statute, ordinance, or regulation was adopted.[45]  The doctrine of

8  negligence per se is not a separate cause of action, but creates an evidentiary presumption that

9  affects the standard of care in a cause of action for negligence."[46]  Following established case

10  law, the statute classifies the presumption as one affecting the burden of proof.[47]

11      "[A]n underlying claim of ordinary negligence must be viable before the presumption of

12  negligence of Evidence Code § 669 can be employed."[48]  The negligence per se doctrine assists as

13  evidence to prove negligence. "[I]t is the tort of negligence, and not the violation of the statute

14  itself, which entitles a plaintiff to recover civil damages.  In such circumstances the plaintiff is not

15  attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a

16  negligence action and is relying upon the violation of a statute, ordinance, or regulation to

17  establish part of that cause of action."[49]  As explained above, to plead a negligence claim,

18  Plaintiffs must allege: (1) duty, (2) breach, (3) causation, and (4) damages.[50]  A negligence claim

19  presumes a duty but no duty on the part of Wells Fargo is alleged here and the general rule, as

20  explained above, is that a lender has no duty to its borrowers.  Therefore, Plaintiff's Negligence

21  Per Se Claim will fail on its merits.

22

23

24

25  [45] *Johnson v. Honeywell Intern. Inc.,* 179 Cal.App.4th 549, 555 (2009); See also, *Quiroz v. Seventh Ave. Center* 45
    Cal.Rptr.3d 222 (App. 6 Dist. 2006).

26  [46] *Johnson v. Honeywell Intern. Inc.,* 179 Cal.App.4th 549, 555 (2009) quoting *Millard v. Biosources, Inc.* 156
    Cal.App.4th 1338, 1353, fn. 2 (2007).

27  [47] See, *DiRosa v. Showa Denko K.K.* 44 C.A.4th 799, 808 (1996).

    [48] *Cal. Service Station and Auto. Repair Ass'n v. American Home Assurance Co.,* 62 Cal.App.4th 1166, 1178 (1998).
28  [49] *Sierra-Bay Fed. Land Bank Assn. v. Superior Court,* 227 Cal.App.3d 318, 333 (1991).
    [50] *Ladd v. County of San Mateo* 12 Cal.4th 913, 917 (1996).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1    **4.    The Agent: Common Law Fraud Cause of Action Is Fatally Flawed:**

2       As an initial matter, it is, of course, unclear to whom this claim is actually directed since

3 no "agent" is identified in the Complaint. Nevertheless, Fraud actions have been classified as

4 "disfavored," and are *subject to strict requirements of particularity and pleading.* Allegations of

5 fraud involve a serious attack on character, and fairness to Wells Fargo demands that it should

6 receive the fullest of details of the charge in order to prepare its defense.[51] Here, Plaintiff has

7 wholly failed to plead the specific facts, or any facts whatsoever, necessary to satisfy the strict

8 pleading standard required for a fraud claim against Wells Fargo.

9       The rule is everywhere followed that fraud must be specifically pleaded. The effect of

10 this rule is twofold: (a) general pleading of the legal conclusion of "fraud" is insufficient; the

11 facts constituting the fraud must be alleged; (b) every element of the Plaintiff's cause of action

12 for fraud must be alleged in the proper manner (i.e. factually and specifically), and the policy of

13 liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective

14 in any material respect.[52] It is essential that the facts and circumstances which constitute the

15 fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite

16 party of what he is called on to answer, and to enable the court to determine whether, on the facts

17 pleaded, there is any foundation, prima facie at least, for the charge of fraud.[53]

18       The requisite elements to a tort cause of action for fraud and deceit are: (1)

19 Representation; (2) Falsity; (3) Knowledge of falsity; (4) Intent to deceive; and (5) Reliance

20 which results in damage.[54] The requirements for pleading fraud **against a *corporation are even***

21 ***more stringent.*** The requirement of specificity in a fraud action against a corporation requires

22 the Plaintiff to allege the names of the persons who performed the allegedly fraudulent conduct,

23 their authority, and when it was performed, none of which is alleged here.[55]

24       The focus of this claim appears to be that "Agent acted in concert and collusion with

25 others named herein in promulgating false representations to cause Petitioner to enter into the

26

---

27 [51] *Scafindi v. Western Loan and Building Company,* 72 Cal. Ap.2d 550, 553 (1946).
[52] *Scafindi, supra* at558; *See* discussion at *5 Witkin, California Procedure, Third Edition, Pleadings* §662, pg 111.

28 [53] *Woodson v. Winchester,* 16 Cal.App. 472, 473 (1911) ; *Allen v. Ramsay, 179 Cal.App.2d 843, 848, (1960)*
[54] *See discussion at 5 Witkin, Cal. Proc. Before Trial (4th ed. 1997), Pleading §668, pp.123-124.*
[55] *Tarmann v. State Farm Mutual Auto Insurance Company Cal.App.4th 153, 157 (1991).*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1   Loan without knowledge or understanding of the terms thereof."[56] However, there are no

2   specific allegations through which Plaintiff established, or can establish, any fraud as to Wells

3   Fargo. Again, it is even unclear who the "Agent" is that Plaintiff is referencing.

4       Furthermore, Plaintiff also failed to establish how he relied upon the alleged fraud by

5   Wells Fargo or how he was damaged by his reliance as is required for fraud causes of action.[57]

6   In fact, Plaintiff simply states that "Agents made these representations with the intention of

7   inducing Petitioner to act in reliance on these representations..."[58] Once again, Plaintiff fails to

8   identify who the "Agents" were, what their representations were, when and how they were made,

9   what he did in reliance on them or how he was damaged thereby.

10       Finally, "an action for relief on the ground of fraud" must be brought within three years

11   from discovery of the fraud.[59] In the Complaint, as explained above, Plaintiff claims that Agent

12   made "false representations to cause Petitioner to enter into the Loan without knowledge or

13   understanding of the terms thereof."[60] The loan terms would have been obvious from the face

14   of the Loan documents and from the payments Plaintiff commenced making. Since Plaintiff did

15   not file this action until August 16, 2010, over three years after he obtained the loan from Wells

16   Fargo in January 2007, the claim of Fraud is clearly barred by the three year statute of

17   limitations and thus has no merit.

18   **5.   The Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Has No Basis In Fact or Law.**

19       Under California law, a viable claim for breach of the implied covenant of good faith and

20   fair dealing must allege five characteristics, which are not satisfied here: 1) inherently unequal

21   bargaining power; 2) non-profit motive for entering into the contract; 3) inadequacy of ordinary

22   contract damages; 4) special vulnerability on the part of plaintiff due to the harm it would suffer

23   from non-performance by other party; and 5) other party's awareness of this vulnerability.[61] The

24   Complaint here satisfies none of these requirements.

25

---

[56] See, Complaint, pg, 27, ll 14, 16.

26   [57] *See discussion at 5 Witkin, Cal. Proc, Before Trial, supra.*.

[58] See, Complaint, pg 28, ll 6-7.

27   [59] California Code of Civil Procedures §338(d)

[60] See, Complaint, pg, 27, ll 14, 16.

28   [61] *Wallis v. Superior Court* 160 Cal.App.3d 1109, 1118 (1984); *Elxsi v. Kukje America Corp.* 672 F.Supp. 1294, 1299 (N.D.CA 1987) (and cases cited therein).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1    Further, the viability of such claims outside the insurance context is suspect. In *Foley v.*

2    *Interactive Data Corp.* (1988) 47 Cal.3d 654, 682-700, the California Supreme Court gave a

3    clear indication of its belief that, while an implied covenant of good faith and fair dealing might

4    still subsist in every contract, outside of the insurance context, its breach would only give rise to

5    contract damages.[62] Although *Foley* itself involved a wrongful termination case, several cases

6    have noted the *Foley* decision ought to apply to virtually any other business relationship other

7    than that of insurer and insured—particularly it has been applied in the context of the lender

8    borrower relationship:[63]

9    Although real parties argue the holding in *Foley* did not eliminate tort liability for
     the breach of the covenant of good faith and fair dealing in the commercial

10   contract context of this case, the plain fact is such an action never existed. Even
     the pre-*Foley* appellate decisions which have applied the doctrine in the

11   employment context did so by finding the characteristics of an employee/
     employer relationship were roughly equivalent to those found in the fiduciary

12   relationship between an insured and its insurer.[64]

13
     Indeed, in *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d

14
     1371, 1398-1401, the court found that this cause of action probably no longer existed in the

15
     context of ordinary commercial transactions:

16
     From this history, it seems clear to us that the recognition of a tort remedy for a

17   breach of the implied covenant in a noninsurance contract has little authoritative
     support. In fact, with but one arguable exception (see fn. 25) and apart from

18   decisions disapproved by *Foley*, every case which has considered the issue has
     rejected the recognition of a special relationship between specific contracting

19   parties.[65]

20
     Although the court in *Careau & Co.*, out of an abundance of caution, applied the five part

21
     test announced in *Wallis, supra*, and the modified version thereof in *Mitsui Manufacturers Bank,*

22
     *supra*, it came to the inevitable conclusion that: "Under no reasonable perspective of the facts in

23
     this case would the *Wallis/Mitsui* standards be satisfied....[T]he 'transaction involved here is the

24

25
     ---
     [62] Despite this clear principal, the complaint here seeks tort damages [Complaint ¶ 83].

26   [63] *Price v. Wells Fargo Bank* 213 Cal.App.3d 465, 476-79 (1989); *Mitsui Manufacturers Bank v. Superior Court* 212
     Cal.App.3d 726, 730-33 (1989).

27   [64] *Mitsui Manufacturers Bank, supra*, at 732-33. *See also Freeman & Mills, Inc. v. Belcher Oil Co.* 11 Cal.4th 85,
     102-03(1995) (eliminating the tort of bad faith denial of contract on the basis that contractual wrongs should not

28   give rise to tort remedies)
     [65] 222 Cal.App.3d at 1399.

-12-

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1 | quintessentially ordinary arms-length commercial transaction between two parties of equal
2 | bargaining strength, breaches of which are adequately remedied by ordinary contract damages.'"

3 | As in *Careau*, the allegations of the Complaint here satisfy none of the factors identified
4 | by the California courts as prerequisites to a cause of action for breach of the implied covenant
5 | of good faith and fair dealing even assuming the viability of this legal theory outside of the
6 | insurance context.

7 | **6.     The Claim for Violation of TILA Is Barred Has No Basis In Fact or Law.**

8 | First and foremost, under 15 USC § 1640(e), any claim for damages for any TILA

9 | violation must have been brought within one year from the date of that violation. In *King v.*

10 | *California*,[66] the court was faced with alleged violations of TILA's non-disclosure provisions.

11 | Here, the alleged non-disclosures were in connection with loans which were entered into more

12 | than three year prior to the filing of the complaint. Plaintiff claims that "the limitations period

13 | for petitioners' damages claims under TILA and RESPA[67] should be Equitably Tolled due to the

14 | Defendants' Misrepresentations and Failure to Disclose."[68] Although under federal law

15 | equitable tolling is applied to statutes of limitations "to prevent unjust result or to maintain the

16 | integrity of a statute," courts have taken a narrow view of equitable exceptions to limitations

17 | periods.[69] The federal doctrine of fraudulent concealment operates to toll the statute of

18 | limitations "where a plaintiff has been injured by fraud and 'remains in ignorance of it without

19 | any fault or want of diligence or care on his part.'"[70] For Plaintiff to be successful in his

20 | argument, it must be determined that "(1) sufficient facts were [not] available to put a reasonable

21 | [borrower] in plaintiff[s]' position on inquiry notice of the possibility of fraud, and (2)

22 | plaintiff[s] exercised due diligence in attempting to uncover the factual basis underlying this

---

26 | [66] *King v. California*, 784 F.2d 910, 913-15 (9th Cir. 1986), cert. denied, 484 U.S. 802 (1987).
     | [67] Plaintiff does not actually state a claim for RESPA in the Complaint.
27 | [68] See, Complaint, pg, 19, ll. 8-10.
     | [69] *Salois v. The Dime Sav. Bank of N.Y.*, 128 F.3d. 20, 25 (1st Cir. 1997) quoting, *King*, 784 F.2d at 915; see,
28 | *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982).
     | [70] *Salois supra* 128 F.3d. 20, 25, quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

-13-

1    alleged conduct."[71] Allegations of fraudulent concealment alone do not excuse plaintiff from
2    exercising reasonable diligence.[72]

3        However, Plaintiff does not plead any facts whatsoever which establish that he was not in
4    possession of any facts he needed, or was not at least in a position of inquiry of the possibility of
5    fraud, or that he exercised *any* due diligence in attempting to uncover the factual basis
6    underlying the alleged conduct. Therefore, equitable tolling is not applicable in this case. Since
7    Plaintiff obtained the Loan from Wells Fargo in January of 2007 but did not file this action until
8    August 16, 2010, Plaintiff's action has been brought over 3 (three) years too late making
9    Plaintiff's claim for damages under TILA entirely time-barred by the applicable one-year statute
10    of limitations period.[73]

11        Furthermore, Plaintiff brings his suit under15 USC §1601, et seq. without identifying any
12    actual section of TILA which he contends was violated here. Defendants are not required to
13    guess the conduct for which they are sought to be held liable and not all sections of TILA give
14    rise to a claim for relief. Therefore, Plaintiff's claim for TILA will not succeed in its merits.

15    **7.**    **The Claim for Intentional Infliction of Emotional Distress is Fatally Flawed**

16        The tort of Intentional Infliction of Emotional Distress ("IIED") requires pleading (1)
17    extreme and outrageous conduct by the defendant with the intention of causing, or reckless
18    disregard of the probability of causing, emotional distress, (2) the Plaintiff's suffering severe or
19    extreme emotional distress, (3) and actual and proximate causation of the emotional distress by
20    the defendant's outrageous conduct.[74] Conduct to be outrageous must be so extreme as to
21    exceed all bounds of decency usually tolerated in a civilized community.[75] Severe emotional
22    distress is emotional distress of such substantial quantity or enduring quality that no reasonable
23    man in a civilized society should be expected to endure it.[76]

24

---

25   [71] *Salois*, 128 F.3d. 20, 25-26 quoting *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir. 1987).
26   [72] *Salois*, 128 F.3d. 20, 26; see, *Truck Drivers & Helpers Union v. NLR*, 993 F.2d 990, 998(1st Cir. 1993)
   ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging
27   party who fails to exercise due diligence, and is thus charged with notice of a potential claim.")
  [73] 15 U.S.C. § 1640(e); see *FRCP*, Rule 12(b)(6).
  [74] *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).
28   [75] *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982).
  [76] *Fletcher v. Western Life Insurance Co.*, 10 Cal.App.3d 376, 397(1970).

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1    In his IIED cause of action, Plaintiff does not plead any facts to support his conclusory

2    allegations that "Defendants either knew that their conduct would cause Petitioner to suffer

3    severe emotional distress, or acted in conscious and/or reckless disregard of the probability that

4    such distress would occur."[77] Instead, Plaintiff concludes that "the conduct committed by

5    Defendants, driven as it was by profit at the expenses of increasingly highly leveraged and

6    vulnerable consumer who placed their faith and trust in the superior knowledge and position of

7    Defendants, was extreme and outrageous and not to be tolerated by civilized society."[78] At no

8    point in the Complaint does Plaintiff actually identify what Wells Fargo did which equated to

9    extreme and outrageous conduct.

10    Indeed, in cases in which the loss allegedly resulting from the tort claim is purely

11    financial, recovery for attendant emotional distress may be had only if the emotional injury

12    suffered is "severe, i.e., substantial or enduring as distinguished from trivial or transitory."[79]

13    More importantly, in *Erlich v. Menezes*,[80] the California Supreme Court confirmed that

14    emotional distress damages are unavailable in cases arising from solely financial injury, and that

15    "[n]o California case has allowed recovery for emotional distress arising solely out of property

16    damage."[81] Similarly, in the context of debt collection, courts acknowledge that "collection of a

17    debt by its very nature often causes the debtor to suffer emotional distress," however, this

18    distress alone is not actionable.[82]

19    Beyond this, where, as here, there is no physical impact or injury on the part of

20    Defendants, the claim is *per se* insufficient, particularly where the conduct with which a

21    defendant is charged is neither "extreme" nor "outrageous."[83] Plaintiff has not pled sufficient

22

23

24    [77] See, Complaint, Opp. pg. 30, ll. 6-9.
      [78] See, Complaint, Opp. Pg. 30, ll. 2-5.
25    [79] *Young v. Bank of America*, 141 Cal.App.3d 108, 114 (1983) . *See also Perati v. Atkinson*, 213 Cal.App.2d 472,
      474 (1963).
26    [80] *Erlich v. Menezes*,21 Cal.4th 543, 555 (1999)
      [81] *See also Sutherland v. Barclays American/Mortgage Corp.*, 53 Cal.App.4th 316, 317 (1997) (rejecting claim of
27    negligent infliction).
      [82] *Ross v. Creel Printing & Publishing Co., Inc.*,100 Cal. App. 4th 736, 745 (2002) .
28    [83] *Branch v. Homefed Bank*, 6 Cal.App.4th 793, 800-01(1992); *Merenda v. Superior Court*, 3 Cal.App.4th 1, 8-
      11(1992); *Lee v. Bank of America*, 218 Cal.App.3d 914, 920 (1990).

-15-

1 facts to give rise to any underlying tort against Wells Fargo and, thus, his claim for intentional
2 infliction of emotional distress is without merit.

3 **III. IF INJUNCTIVE RELIEF IS GRANTED, MOVING PARTY SHOULD BE**
4 **REQUIRED TO POST A BOND IN THE MINIMUM AMOUNT OF $\_\_\_\_:**

5 FRCP Rule 65(c) requires as a condition of any injunction that the party obtaining an
6 injunction post a bond in an amount "the court deems proper for the payment of such costs and
7 damages as may be incurred or suffered by any party who is found to have been wrongfully
8 enjoined." In light of the foregoing, were the Court to be inclined to grant injunctive relief here,
9 the amount of the bond which ought to be required in order to obtain the benefit of the injunction
would need to considerable—possibly even in the amount of the unpaid balance of the loan in
10 question.[84] It is no answer for Plaintiff to insist that the property will still be there when he
11 loses.[85]

12 Based on the foregoing, the amount of the bond here should be at least $75,000.
13 Currently, Plaintiff currently owes $38,379.22 in missed payments alone from October 1, 2009
14 forward (not including accrued fees and costs) and as of September 2010, Plaintiff owed US
15 Bank, a total of $523,017.53 on the Loan balance itself (not including attorneys fees and costs).[86]
16 In addition, Wells Fargo has been forced to incur considerable attorney fees and costs in
17 addressing these frivolous and bad faith claims.

18 ///
///
19 ///

20

21

22

23

24

25

26

27 [84] The bond is designed to provide a ready source of recovery for those damages without regard to the moving
party's solvency. *Continuum Co. v. Incepts, Inc.,* 873 F.2d 801, 803 (5th Cir. 1989); *Nintendo v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1037 (9th Cir. 1994).
28 [85] Even putting to the side the obvious risks of declining home prices and failures to maintain.
[86] See, Declaration of Erin Hirzel-Roesch,

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

1 **IV.   CONCLUSION:**

2 Based upon the foregoing, Wells Fargo respectfully requests that Plaintiff's request for

3 injunctive relief be denied in its entirety.   In the event the Court grants injunctive relief,

4 however, Wells Fargo respectfully request that Plaintiff be ordered to post a bond in the

5 minimum amount of $75,000 by the close of business on September 23, 2010 to protect Wells

6 Fargo from the damages likely to be sustained as a result of having to set aside the foreclosure

7 sale and being precluded from enforcing its rights under the Loan pending resolution of this

8 action.

9

10                                                   Respectfully submitted,

11                                                   WRIGHT, FINLAY & ZAK, LLP

12

13

14 Dated: September 9, 2010              By:     /Magdalena D. Kozinska, Esq/
                                                  Magdalena D. Kozinska, Esq.
15                                                Jonathan D. Fink, Esq.
                                                  Attorney for Defendant,
16                                                WELLS FARGO BANK, N.A, erroneously
                                                  sued as WELLS FARGO HOME
17                                                MORTGAGE, INC.

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On September 9, 2010, I served the within **OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** on all interested parties in this action as follows:

[x]   by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**Stephen Foos**
3115 Acanto Place
Redding, CA 96003
(530) 710-2732
Plaintiff In Pro Per

[ ]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]   (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[x]   (BY OVERNIGHT EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by OverNight Express with the delivery fees provided for.

[x]   (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on September 9, 2010, at Newport Beach, California.

/Gretchen Grant

-1-