WRIGHT, FINLAY & ZAK, LLP
Robin P. Wright, Esq., SBN 150984
Jonathan D. Fink, Esq. SBN 110615
Magdalena D. Kozinska, Esq.  SBN 258403
4665 MacArthur Court, Suite 280
Newport Beach, California 92660
Tel. (949) 477-5050; Fax (949) 477-9200

Attorneys for Defendants,
WELLS FARGO BANK, N.A., erroneously sued as WELLS FARGO HOME MORTGAGE,
INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN FOOS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO HOME MORTGAGE, INC.<br><br>Defendant. | Case No.: 2:10-cv-02201-FCD-CMK<br><br>**DECLARATION OF ERIN HIRZEL-ROESCH OF WELLS FARGO BANK, N.A. IN OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Date:   September 23, 2010<br>Time:  10:00 a.m.<br>Crt.:    2<br><br>[Assigned to the Hon. Frank C. Damrell, Jr.]<br><br>Complaint filed: August 16, 2010 |

I, Erin Hirzel-Roesch, declare and state as follows:

1.      I am employed by Wells Fargo Bank, N.A., erroneously named in this action as Wells Fargo Home Mortgage, Inc. ("WFB"), as a Litigation Specialist.  In this capacity, and as part of my regular duties, I have necessarily become familiar with and have personal knowledge

1   of WFB's business practices and procedures concerning the manner in which services are
2   performed by WFB. I also necessarily have access to WFB's records in general and with respect
3   to the loan of Plaintiff Stephen Foos ("Plaintiff") in particular. Except where otherwise
4   indicated, the following facts are true of my own, personal knowledge or from my review of
5   WFB's files and records and, if called upon to do so, I could and would competently testify to
6   the truth thereof.

7   2.   I state that the records and documents referred to in this Declaration constitute
8   writings maintained, taken or made in the regular or ordinary course of business of WFB at or
9   near the time of the act, condition or event to which they relate by persons employed by WFB
10  who had a business duty to WFB to accurately and completely take, make and maintain such
11  records and documents. As part of my duties for WFB, I am personally familiar with the manner
12  and process in which such records are kept and maintained and have personally reviewed these
13  records prior to making this Declaration.

14  3.   WFB is the original lender and both the original and current loan servicer for this
15  Loan. WFB is the entity, responsible for the collection and servicing of this Loan for the current
16  beneficiary. Wells Fargo Home Mortgage, Inc. ("WFHM, Inc.") merged into WFB in or about
17  April 2004 well before the Foos Loan was made and WFHM, Inc. no longer exists, though, WFB
18  has a division known as Wells Fargo Home Mortgage. At no time has WFHM, Inc. been the
19  lender or beneficiary of this Loan.

20  4.   This Declaration is submitted in Opposition to Plaintiff's Motion for a
21  Preliminary Injunction.

22  5.   From my review of WFB's files and various publicly recorded documents related
23  to this transaction, I state that, on or about January 29, 2007, WFB made a loan to Plaintiff in
24  the amount of $552,000.00 ("Loan"), which was secured by real property located at 3115
25  Acanto Place, Redding , CA 96003 ("Property"). A true and correct copy of the Deed of Trust
26  is attached as Exhibit "A" hereto, and incorporated by reference.

27  6.   From my review of the accounting records of WFB and the public records I state
28  that, on January 29, 2010, when Plaintiff owed $20,113.88 in arrears, a Notice of Default and

2

**DECLARATION OF ERIN HIRZEL-ROESCH WELLS FARGO BANK, N.A. IN
OPPOSITION TO PRELIMINARY INJUNCTION**

1 Election to Sell Under Deed of Trust ("Default") was recorded by First American LoanStar
2 Trustee Services, LLC ("FALTS") at WFB's direction. A true and correct copy of the Notice of
3 Default is attached as Exhibit "B" hereto and incorporated by reference.

4      7.      WFB's records and public records further reveal that, on or about April 13, 2010,
5 WFB assigned the Deed of Trust, to US Bank National Association, as Trustee for CSMC 2007-
6 4 ("US Bank"). This assignment was recorded on April 15, 2010. A true and correct copy of the
7 Assignment is attached as Exhibit "C" hereto and incorporated by reference. WFB's records
8 reflect that US Bank continued to utilize WFB as its loan servicer on this Loan.

9      8.      When Plaintiff still failed to cure his default, a Notice of Trustee's Sale was
10 recorded by FALTS, as trustee, at WFB's direction, on May 4, 2010, setting the sale for May 25,
11 2010. A true and correct copy of the Notice of Sale is attached as Exhibit "D" hereto and
12 incorporated by reference.

13      9.      In the course of its duties as loan servicer, WFB has been engaged in ongoing
14 loan modification discussions with Plaintiff. As a result of these discussions WFB has agreed to
15 have the Trustee's Sale postponed on numerous occasions. Unfortunately, despite WFB's
16 request Plaintiff has failed to provide the required documents to verify income. A true and
17 correct copy of Plaintiff's most recent hardship letter is attached as Exhibit "E." Currently, the
18 Trustee's Sale is schedule for September 26, 2010.

19      10.      My review of WFB's accounting records shows that Plaintiff has not made any
20 payments on the Loan from October 2009 to the present. A true copy of the Account Activity
21 Statement is attached as Exhibit "F" hereto and incorporated by reference. Plaintiff's monthly
22 payments were $3,489.02. See Exhibit "F." Thus, Plaintiff currently owes $38,379.22 in
23 missed payments alone from October 1, 2009 forward (not including accrued fees and costs)
24 and as of September 2010, Plaintiff owed US Bank, a total of $523,017.53 on the Loan balance
25 itself (not including attorneys fees and costs). Plaintiff has not tendered this payment, or any
26 part of it.

27 ///
28 ///

3

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct. This Declaration is executed on this 8th day of September, 2010 at

3    Frederick, Maryland.

4

5

6                                                    Erin A. Hirzel Roesch, Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    4

**DECLARATION OF Erin A. Hirzel Roesch WELLS FARGO BANK, N.A.,SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC. IN OPPOSITION TO PRELIMINARY INJUNCTION**

EXHIBIT "A"

⑨

Recording Requested By: Fidelity Title

**WELLS FARGO BANK, N.A.**
**5540 FERMI CT #200**
**CARLSBAD, CA 92008-**

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN 55121-1663**
Prepared By:
**ANNETTE COPPA**
**WELLS FARGO BANK, N.A.**
**5540 FERMI CT #200**
**CARLSBAD, CA 92008-**

**2007-0006657**

| Recorded | REC FEE | 61.00 |
| Official Records | | |
| County of | | |
| Shasta | | |
| Leslie Morgan | | |
| Assessor-Recorder | | |
| | MS | |
| 03:42PM 09-Feb-2007 | Page 1 of 19 | |

————————————[Space Above This Line For Recording Data]————————————

# DEED OF TRUST

0157681649

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used
in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **JANUARY 29, 2007**
together with all Riders to this document.
(B) **"Borrower"** is
**STEPHEN N. FOOS AND PRISCILLA M. FOOS, HUSBAND AND WIFE AS JOINT**
**TENANTS**

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of **THE UNITED STATES OF AMERICA**

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 18        Initials:

**FORM 3005    1/01**
SCA01    Rev 11/09/00

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note"** means the promissory note signed by Borrower and dated **JANUARY 29, 2007** .
The Note states that Borrower owes Lender **FIVE HUNDRED FIFTY-TWO THOUSAND**
**AND NO/100** Dollars
(U.S. $ .....**552,000.00**...........) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than **FEBRUARY 1, 2037** .
**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider           ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA02   Rev 12/16/00            Page 2 of 16           Initials: _____       **FORM 3005**   **1/01**

governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | SHASTA | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

**LEGAL DESCRIPTION IS ATTACHED HERETO AS SCHEDULE "A" AND MADE A PART HEREOF.**

**THIS IS A PURCHASE MONEY MORTGAGE.**

Parcel ID Number:                                                    which currently has the address of
**3115 ACANTO PLACE**                                                               [Street]
**REDDING**                                          [City] , California      **96003**      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03    Rev 11/09/00              Page 3 of 18          Initials: _____      FORM 3005    1/01

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

SCA04   Rev 11/09/00          Page 4 of 18        Initials           FORM 3005   1/01

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other Items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

SCA05   Rev 11/09/00                    Page 5 of 18          Initials: _A_ P.F.          **FORM 3005**   1/01

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

SCA06   Rev 09/22/00              Page 6 of 18           Initials          FORM 3005   1/01

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

SCA07    Rev 11/09/00                    Page 7 of 18              Initials: $\mathcal{H}$ $\mathcal{V}$. $\mathcal{F}$.      FORM 3005    1/01

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

SCA08   Rev 09/22/00          Page 8 of 18        Initials _____   FORM 3005   1/01

SHASTA,CA                        Page 8 of 19              Printed on 8/27/2010 3:25:06 PM
Document: DOT 2007.6657

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00              Page 9 of 19        Initials ___  *P.F.*     FORM 3005   1/01

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

SCA10    Rev 09/22/00          Page 10 of 18          Initials _____    FORM 3005    1/01

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

SCA11  Rev 11/03/00          Page 11 of 18          Initial __ P.F.    FORM 3005   1/01

this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

SCA12   Rev 11/09/00                Page 12 of 16           Initials _____   FORM 3005   1/01

SHASTA,CA                                     Page 12 of 19                    Printed on 8/27/2010 3:25:06 PM
Document: DOT 2007.6657

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SCA13  Rev 11/09/00          Page 13 of 18          Initials _P.F._          FORM 3005  1/01

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

6CA14    Rev 12/27/00                    Page 14 of 19              Initials $\mathcal{A} \mathcal{P} \mathcal{F}$.    **FORM 3005    1/01**

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used In this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined In Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property Is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

SCA19   Rev 10/13/00              Page 15 of 18         Initials          FORM 3005   1/01

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                             STEPHEN N. FOOS                **Borrower**

_____                    _____ (Seal)
                                             PRISCILLA M. FOOS              **Borrower**

SCA17    Rev  12/27/00                Page 17 of 18        Initials_____  **FORM 3005    1/01**

State of California,                                                    ss:

County of *Shasta*

On *2/5/07*          before me, *Barbera A. Brooks Notary Public*
                                                                    personally appeared
**STEPHEN N. FOOS AND PRISCILLA M. FOOS, HUSBAND AND WIFE AS JOINT
TENANTS**


**Non-Borrower: PRISCILLA M. FOOS**

                                                          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.



BARBARA A. BROOKS
COMM. # 1473053
NOTARY PUBLIC-CALIFORNIA
SHASTA COUNTY
COMM. EXP. MARCH 25, 2008

*Barbara a. Brooks* (Seal)

FROM OOHOA-SHEHAN, INC                    (WED) JAN 01 2007 12:22/ST. 12:19/No. 7600000952 P 10

Escrow No.: 06-131201-BB
Locate No.: CAFNT0945-0945-0003-0000131201
Title No.: 06-131201-PM

## EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF REDDING, COUNTY OF SHASTA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

Lot 20, as shown on the Map of Bel Air Estates Unit 1-A filed for record July 24, 2006 in Book 24 of Maps at page 6, Shasta County Records.

Reserving therefrom a non-exclusive easement for driveway purposes more particularly described as follows: Beginning at the Northwest property corner of Lot 19 of said Bel Air Estates Unit 1-A, thence heading in a Northeasterly direction bearing North 81°07'09" East for 128.66 feet, thence heading Southeast bearing South 53° for a distance of 16.97 feet across Lot 19 to the property line of Lot 20 of said Bel Air Estates Unit 1-A, thence heading Northwest bearing North 08°53'51" West for 27 feet, thence heading Southwest bearing South 81°07'09" West for 140.66 feet thence heading Southwesterly along that line shown as curve "C237" on said map of Bel Air Estates Unit 1-A, for a distance of 15.06 feet to the point of beginning.
Excepting therefrom that portion lying outside of the boundaries of said Lot 20. Said easement so reserved is for the benefit of and appurtenant to Lots 19 and 21 of said Bel Air Estates Unit 1-A and any parts or portions thereof.

PARCEL 2:

A non-exclusive easement for driveway purposes more particularly described as follows: Beginning at the Northwest property corner of Lot 19 of said Bel Air Estates Unit 1-A, thence heading in a Northeasterly direction bearing North 81°07'09" East for 128.66 feet, thence heading Southeast bearing South 53° for a distance of 16.97 feet across Lot 19 to the property line of Lot 20 of said Bel Air Estates Unit 1-A, thence heading Northwest bearing North 08°53'51" West for 27 feet, thence heading Southwest bearing South 81°07'09" West for 140.66 feet thence heading Southwesterly along that line shown as curve "C237" on said map of Bel Air Estates Unit 1-A, for a distance of 15.06 feet to the point of beginning. Excepting therefrom any portion lying within said Lot 20. Said easement so granted is for the benefit of and appurtenant to Lot 20 and any parts or portions thereof.

**Note: Parcel 2 herein described has not yet been created of record and is shown herein for informational purposes only. If it is not the desire of the vestee to create said easement of record, Parcel 2 should be deleted from the land described herein. \newline**

EXHIBIT "B"

**2010-0002726**

| Recorded | REC FEE | 23.00 |
|---|---|---|
| Official Records | | |
| County of | | |
| Shasta | | |
| Leslie Morgan | | |
| Assessor—Recorder | | |
| 11:57AM 29-Jan-2010 | Page 1 of 3 | |

Recording Requested By:
**First American Title Insurance Company**

When Recorded Mail To:
**First American LoanStar Trustee Services LLC**
**P.O. BOX 961253**
**FORT WORTH, TX 76161-0253**

Space above this line for Recorder's use only

TS No. :      CA1000191791
APN:         113-390-020-000
TSG No. :   4364662

**Pursuant to California Code Section 2924c(b)(1) please be advised of the following:**

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$20,113.88** as of 01/27/2010, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**90708-WELLS FARGO HOME MORTGAGE**
**c/o First American LoanStar Trustee Services LLC**
**P.O. BOX 961253**
**FORT WORTH, TX 76161-0253**

TS No.:        CA1000191791
VA/FHA/PMI No.:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **First American LoanStar Trustee Services LLC**        As Agent for the current beneficiary under a Deed of Trust dated **01/29/2007**, executed by:

**STEPHEN N. FOOS AND PRISCILLA M. FOOS, HUSBAND AND WIFE AS JOINT TENANTS,**

as Trustor(s) to secure certain obligations in favor of **WELLS FARGO BANK,N.A.** as Beneficiary, recorded **02/09/2007**, (as Instrument No.) **2007-0006657**, (in Book) , (Page) of Official Records in the Office of the Recorder of **Shasta** County, California describing land therein as:

**AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST**

said obligations including ONE NOTE FOR THE ORIGINAL sum of $552,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 10/1/2009 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES. NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **Jan 27, 2010**                    First American LoanStar Trustee Services LLC      As Agent
                                           For The Current Beneficiary
                                           By: First American Title Insurance Company, as
                                           Attorney-In-Fact

                                           By: _____

                                           Name: WENDY RANDALL  (signature)

                                           Title:_____

**First American LoanStar Trustee Services LLC      MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

See Attached Declaration

# NOTICE OF DEFAULT DECLARATION
PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: STEPHEN N FOOS
Property Address:  3115  ACANTO PLACE
                   REDDING       CA   96003

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the
"Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been
met. This Declaration is required for any residential owner occupied property in which the loan
was originated between January 1, 2003 and December 31, 2007.  Non-owner occupied property
and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*    The Beneficiary has made contact with the borrower pursuant to CA Civil Code
     2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the
     borrower's financial situation and explore options for the borrower to avoid foreclosure.

*    Due Diligence to contact the borrower was exercised. pursuant to CA Civil Code
     2923.5(g)(2) by the Beneficiary.

*    The borrower has surrendered the property as evidenced by either a letter confirming the
     surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or
     authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*    The borrower has contracted with an organization, person, or entity whose primary
     business is advising people who have decided to leave their homes on how to extend the
     foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries
     pursuant to CA Civil Code 2923.5(h)(2).

*    The borrower has filed for bankruptcy and the proceedings have not been
     finalized pursuant to CA Civil Code 2923.5(h)(3).

I certify (or declare) under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

Dated:   01/20/2010

Wells Fargo Home Mortgage

John Kennerty
VP of Loan Documentation

# EXHIBIT "C"

||||||||||||||||||||||||||||||||||||||||||

**2010-0011050**

| Recorded | REC FEE | 17.00 |
| Official Records | | |
| County of | | |
| Shasta | | |
| Leslie Morgan | | |
| Assessor-Recorder | | |
| | BD | |
| 11:49AM 15-Apr-2010 | Page 1 of 1 | |

Recording Requested By:
**First American Title Insurance Company**

When Recorded Mail To:
First American LoanStar Trustee Services LLC
P.O. BOX 961253
FORT WORTH, TX 76161-0253

*Space above this line for Recorder's use only*

TS No. :      **CA1000191791**                          **California**
TSG No. :    **4364662**
APN:       **113-390-020-000**

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

US Bank National Association, as Trustee for CSMC 2007-4

all beneficial interest under that certain Deed of Trust dated: **01/29/2007** executed by

**STEPHEN N. FOOS AND PRISCILLA M. FOOS, HUSBAND AND WIFE AS JOINT TENANTS**

Trustor(s), to FIRST AMERICAN LOANSTAR TRUSTEE SERVICES LLC, as Trustee, and recorded on 02/09/2007 as Instrument No. 2007-0006657, in Book «DeedBook», Page «DeedPage» in the office of the County Recorder of Shasta County, California together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated :  **4|13|20 10**                   WELLS FARGO BANK, N.A., BY FIRST
                                         AMERICAN TITLE INSURANCE COMPANY,
                                         ITS ATTORNEY IN FACT, AS BENEFICIARY

                                         By: Rhonda Martin , Certifying Officer

State of          **Texas**

County of       **Tarrant**

Before me, Sherenetria Taylor Mosby    on this day personally appeared,

Rhonda Martin , known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this **13th** day of April , AD, 2010 .

                            (Notary Seal)



EXHIBIT "D"

2010-0013029

Recording Requested By:
First American Title Insurance Company

When Recorded Mail To:
First American LoanStar Trustee Services LLC
P.O. Box 961253
Fort Worth, TX 76161-0253
(817)699-6035

| | Recorded | REC FEE | 20.00 |
| --- | --- | --- | --- |
| | Official Records | | |
| | County of | | |
| | Shasta | | |
| | Leslie Morgan | | |
| | Assessor-Recorder | | |
| | | ML | |
| | 11:50AM 04-May-2010 | Page 1 of 2 | |

| TSG No.: | 4364662 |
| --- | --- |
| TS No.: | CA1000191791 |
| FHA/VA/PMI No.: | |
| APN: | 113-390-020-000 |

Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED **01/29/2007**. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On **05/25/2010** at **11:00 A.M.**, First American LoanStar Trustee Services LLC , as duly appointed Trustee under and pursuant to Deed of Trust recorded **02/09/2007**, as Instrument No. **2007-0006657**, in book , page , of Official Records in the office of the County Recorder of **Shasta** County, State of **California**. Executed by:

**STEPHEN N. FOOS AND PRISCILLA M. FOOS, HUSBAND AND WIFE AS JOINT TENANTS,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) **"11:00AM AT THE FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 1500 COURT ST., REDDING, CA**

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# **113-390-020-000**

The street address and other common designation, if any, of the real property described above is purported to be:

### 3115 ACANTO PLACE, REDDING, CA 96003

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$544,435.68**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

First American Title Insurance Company
First American LoanStar Trustee Services LLC
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707

HANK DUONG FOR TRUSTEE'S SALE INFORMATION
PLEASE CALL 714-480-5690

**Date: 04/29/2010**

First American LoanStar Trustee Services LLC
MAY BE ACTING AS A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT. ANY
INFORMATION OBTAINED MAY BE USED
FOR THAT PURPOSE.

# CALIFORNIA DECLARATION

I, Marsha Graham of Wells Fargo Home Mortgage, Inc., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct.

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: 6-17-09

By: Marsha Graham

Title: Assistant Vice President

Name: Marsha Graham

EXHIBIT "E"

July 26, 2010          Financial Hardship letter for Acct# 0157631649, STEPHEN N FOOS

## LOAN MODIFICATION/MORATORIUM/DEFERRED PAYMENT PROGRAM
### TRUSTEE SALE IS SCHEDULED FOR July 29th, 2010 TS NO. CA1000191791

Property address: 3115 Acanto Place, Redding, CA 96003

ATTN: Wells Fargo Home Mortgage

VIA FAX# (866)-359-7363

To Whom It May Concern:

Per my conversation with James (ID# 9VE) and Kelly (ID # OL4), please note the following hardship letter, financial worksheet, copy of commission check from new position as manufacturer's rep, IRS Form 4506T and update on income possibilities. It is my intent to keep this property and it is my primary residence. These last 2+ years have been very difficult for me. My wife was diagnosed with cancer in March of 2008 and I was her primary care giver as we did not have insurance coverage. She progressively got worse until she died August 1st, 2008. Needless to say, during this time I was unable to work because she required 24/7 care (and for months afterward was not able to work because of the tremendous emotional trauma of losing a spouse), had many medical expenses and along with this event, the economy continued to deteriorate. The few transactions I have been able to do in equipment leasing/financing (has been my main source of income for almost 30 years) became more difficult because of my customer's worsening credit scores and a number of banks/lenders I had worked with were going bankrupt and as of now completely out of business. The vendors selling equipment have seen their businesses all but disappear. My income during this time has gone down to virtually 0. Also, the unemployment rate in Redding is approximately 22%-one of the highest rates in the country. I have been living on credit cards, a tax refund from the IRS & State of CO and a small insurance settlement for my wife's death. I continued to honor payments to Wells Fargo through September of last year and have asked questions through a Qualified Written Request regarding my account that have never been completely answered.

I have gone back to school to learn new information/skills that might fit this new economy. I believe in the next 2-3 months, that I will begin to see some income from the new industry I have been studying. I also just became a manufacturer's representative (June 16th, 2010) for a company called MediConsult (you can verify with Greg Larsen, National Trainer at 415-209-9320). I just received my first commission check 3 days ago for June sales and a great start (see copy attached). The equipment is manufactured in Germany (Magnetic Resonance Stimulation) and is already having major impact on health problems people are facing. I have already been consulting with some physicians and I am really excited about the possibilities. Although this is a commission only position, I am anticipating $10k/month of income in 120 days.

If I do not qualify as of this date for a loan modification, I would request a 90 day Moratorium/Deferred Payment Program for the Trustee's sale on the property that is scheduled for Thursday, July 29th to be

STEPHEN N FOOS-ACCT# 0157631649

07/26/2010   8:09PM (GMT-05:00)

For Property address: 3115 Acanto Place, Redding, CA 96003
STEPHEN N FOOS ACCOUNT# 0157631649
TS NO. CA1000191/91

able to better explore options and remedies and allow time to readjust and potentially generate Income.

Thank you in advance for your consideration of this urgent request.

With regards,

STEPHEN N FOOS
ACCT# 0157631649

Enclosures:

1) Financial Worksheet dated 7/26/10
2) Copy of commission Check from MediConsult
3) No Tax Returns are available. Filed an extension for 2009 with no taxes due for that year. Please find attached 4506T for you to obtain tax returns when filed.
4) Current Copy from Shasta County Tax Assessors office shows a current property valuatalon $433,000 on Property. It just came in the mail this last week and will forward in a separate email. The assessment was done in January of 2010 and property prices have continued to deteriorate.

# EXHIBIT "F"

**HOME MORTGAGE**

**Customer Account Activity Statement**

Loan # 708 - 0157631649

FOOS

Page 1 of 2

v1.04

| Trans-action Date | Effective Date | Due Date | Monthly Payment Amount | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Fees | Assessed Recover-able Expenses | Principal Balance | Fee Balance | Recover-able Fees | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | $946,496 97 | $0 00 | $0 00 | Beginning Totals/Balances |
| 06/26/07 | 06/26/07 | Jul-07 | | -$3,489.02 | $519.04 | $2,970.98 | | | -$547,670 93 | $0.00 | $0.00 | Payment |
| 06/26/07 | 06/26/07 | Aug-07 | | $498.97 | $498.97 | | | | $547,461.96 | $0.00 | $0.00 | Principal Curtailment |
| 07/23/07 | 07/23/07 | Aug-07 | | $3,489 02 | $523.49 | $2,965.53 | | | $646,958.47 | $0.00 | $0 00 | Payment |
| 07/23/07 | 07/23/07 | Sep-07 | | $481 96 | $481.96 | | | | $546,476.51 | $0.00 | $0 00 | Principal Curtailment |
| 08/24/07 | 08/24/07 | Sep-07 | | $3,489.02 | $528 64 | $2,960.09 | | | $545,947 87 | $0.00 | $0 00 | Payment |
| 08/24/07 | 08/24/07 | Oct-07 | | $476 51 | $476.51 | | | | $545,471.05 | $0.00 | $0.00 | Principal Curtailment |
| 10/03/07 | 10/03/07 | Oct-07 | | $3,489 02 | $534 38 | $2,954 64 | | | $544,936.68 | $0.00 | $0.00 | Payment |
| 10/03/07 | 10/03/07 | Nov-07 | | $471 08 | $471.09 | | | | $544,465.62 | $0.00 | $0.00 | Principal Curtailment |
| 10/29/07 | 10/29/07 | Nov-07 | | $3,489 02 | $539 83 | $2,949.19 | | | $543,925.79 | $0.00 | $0.00 | Payment |
| 10/29/07 | 10/29/07 | Dec-07 | | $459.62 | $459.62 | | | | $543,466.17 | $0.00 | $0.00 | Principal Curtailment |
| 11/30/07 | 11/30/07 | Dec-07 | | $3,489 02 | $545.28 | $2,943 74 | | | $542,914.99 | $0 00 | $0 00 | Payment |
| 11/30/07 | 11/30/07 | Jan-08 | | $460.17 | $460.17 | | | | $542,454 72 | $0.00 | $0.00 | Principal Curtailment |
| 12/21/07 | 12/21/07 | Jan-08 | | $3,489 02 | $550.72 | $2,938.30 | | | $541,904.00 | $0 00 | $0 00 | Payment |
| 12/21/07 | 12/21/07 | Feb-08 | | $454 72 | $454 72 | | | | $541 449 28 | $0.00 | $0.00 | Principal Curtailment |
| 01/21/08 | 01/21/08 | Feb-08 | | $3,489 02 | $556 17 | $2,932 85 | | | $540,893.11 | $0 00 | $0 00 | Payment |
| 01/21/08 | 01/21/08 | Mar-08 | | $649.28 | $949.28 | | | | $539,943 63 | $0 00 | $0 00 | Principal Curtailment |
| 02/12/08 | 02/12/08 | Mar-08 | | $3,489 02 | $564 32 | $2,924 70 | | | $539,379.51 | $0.00 | $0 00 | Payment |
| 02/12/08 | 02/12/08 | Apr-08 | | $943 68 | $943 68 | | | | $538,435.83 | $0 00 | $0 00 | Principal Curtailment |
| 04/01/08 | 04/01/08 | Apr-08 | | $3,489 02 | $572 49 | $2,916 53 | | | $537,863.19 | $0.00 | $0.00 | Payment |
| 04/01/08 | 04/01/08 | May-08 | | $435 68 | $435.69 | | | | $537,427 51 | $0 00 | $0.00 | Principal Curtailment |
| 04/17/08 | 04/17/08 | May-08 | | $3,489 02 | $577.95 | $2,911.07 | | | $536,849 56 | $0 00 | $0 00 | Payment |
| 04/17/08 | 04/17/08 | Jun-08 | | $1,000 00 | $1,000.00 | | | | $535,849 56 | $0.00 | $0 00 | Principal Curtailment |
| 05/14/08 | 05/14/08 | Jun-08 | | $3,489 02 | $586.50 | $2,902.52 | | | $535,263.02 | $0.00 | $0 00 | Payment |
| 05/14/08 | 05/14/08 | Jul-08 | | $949 56 | $949.56 | | | | $534,413.50 | $0 00 | $0 00 | Principal Curtailment |
| 06/20/08 | 06/20/08 | Jul-08 | | $3,489 02 | $594.28 | $2,894.74 | | | $533,919.22 | $0 00 | $0 00 | Payment |
| 06/20/08 | 06/20/08 | Aug-08 | | $413.50 | $413.50 | | | | $533,405.72 | $0.00 | $0.00 | Principal Curtailment |
| 07/10/08 | 07/10/08 | Aug-08 | | $3,489 02 | $599 74 | $2,889 28 | | | $532,905 98 | $0.00 | $0 00 | Payment |
| 08/25/08 | 08/25/08 | Sep-08 | | $3,489 02 | $602 99 | $2,896.03 | | | $532,202 99 | $0.00 | $0.00 | Payment |
| 08/25/08 | 08/25/08 | Oct-08 | | $300 00 | $300.00 | | | | $531,902.99 | $0.00 | $0 00 | Principal Curtailment |
| 09/30/08 | 09/30/08 | Oct-08 | | $3,489.02 | $607 88 | $2,981.14 | | | $531,295.11 | $0 00 | $0 00 | Payment |
| 09/30/08 | 09/30/08 | Nov-08 | | $460.00 | $460.00 | | | | $530,835 11 | $0 00 | $0 00 | Principal Curtailment |
| 10/13/08 | 10/13/08 | Nov-08 | | $3,489 02 | $613 66 | $2,875 36 | | | $530,221 45 | $0 00 | $0 00 | Payment |

**HOME MORTGAGE**

## Customer Account Activity Statement

Loan # 708 - 0157631649

Page 2 of 2

v1.04

**FEES**

| Trans-action Date | Effective Date | Due Date | Monthly Payment Amount | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Fees | Assessed Recoverable Expenses | Principal Balance | Fee Balance | Recoverable Fees | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/13/08 | 10/13/08 | Dec-08 | | $835.11 | $835.11 | | | | $529,366.94 | $0.00 | $0.00 | Principal Curtailment |
| 12/08/08 | 12/08/08 | Dec-08 | - - | -$3,489.02 | -$621.51 | $2,867.51 | . . . | | $528,764.63 | $0.00 | $0.00 | Payment |
| 01/02/09 | 01/02/09 | Jan-09 | | $3,489.02 | $624.68 | $2,664.14 | | | $528,139.95 | $0.00 | $0.00 | Payment |
| 01/26/09 | 01/26/09 | Feb-09 | | $3,489.02 | $628.26 | $2,860.76 | | | $527,511.69 | $0.00 | $0.00 | Payment |
| 02/17/09 | 02/17/09 | Mar-09 | | $3,489.02 | $631.66 | $2,857.36 | | | $526,880.03 | $0.00 | $0.00 | Payment |
| 03/30/09 | 03/30/09 | Apr-09 | | $3,489.02 | $635.09 | $2,853.93 | | | $526,244.94 | $0.00 | $0.00 | Payment |
| 05/11/09 | 05/11/09 | May-09 | | $3,489.02 | $638.53 | $2,850.49 | | | $525,606.41 | $0.00 | $0.00 | Payment |
| 05/26/09 | 05/26/09 | Jun-09 | | $3,489.02 | $641.99 | $2,847.03 | | | $524,964.42 | $0.00 | $0.00 | Payment |
| 06/22/09 | 06/22/09 | Jul-09 | | $3,489.02 | $645.46 | $2,943.56 | | | $524,318.96 | $0.00 | $0.00 | Payment |
| 06/17/09 | | | | | | | -$174.45 | | $524,318.96 | $174.45 | $0.00 | Late Charge Assessment |
| 06/18/09 | | | | | | | -$174.45 | | $524,318.96 | $348.90 | $0.00 | Late Charge Assessment |
| 06/22/09 | | | | | | | $348.90 | | $524,318.96 | $0.00 | $0.00 | Late Charge Adjustment |
| 06/22/09 | 06/21/09 | Aug-09 | | $6,979.04 | $648.96 | $2,640.08 | | | $523,670.00 | $0.00 | $0.00 | Payment |
| 06/22/09 | 06/21/09 | Sep-09 | | | $652.47 | $2,938.55 | | | $523,017.53 | $0.00 | $0.00 | Payment applied |
| 10/16/09 | | | | | | | -$174.45 | | $523,017.53 | $174.45 | $0.00 | Late Charge Assessment |
| 11/16/09 | | | | | | | -$174.45 | | $523,017.53 | $348.90 | $0.00 | Late Charge Assessment |
| 12/16/09 | | | | | | | -$174.45 | | $523,017.53 | $523.35 | $0.00 | Late Charge Assessment |
| 01/19/10 | | | | | . | | -$174.45 | | $523,017.53 | $697.80 | $0.00 | Late Charge Assessment |
| 01/29/10 | | | | | | | | -$95.00 | $523,017.53 | $697.80 | $95.00 | Broker Price Opinion |
| 02/16/10 | | | | | | | -$174.45 | | $523,017.53 | $872.25 | $95.00 | Late Charge Assessment |
| 02/22/10 | | | | | | | | -$15.00 | $523,017.53 | $872.25 | $110.00 | Inspection Fee |
| 03/02/10 | | | | | | | | -$360.00 | $523,017.53 | $872.25 | $470.00 | Attorney Advances |
| 03/02/10 | | | | | | | | -$23.00 | $523,017.53 | $872.25 | $493.00 | Statutory Expenses |
| 03/02/10 | | | | | | | | -$47.98 | $523,017.53 | $872.25 | $540.98 | Statutory Expenses |
| 03/02/10 | | | | | | | | -$805.00 | $523,017.53 | $872.25 | $1,345.98 | Title Policy Fee |
| 03/16/10 | | | | | | | -$174.45 | | $523,017.53 | $1,046.70 | $1,345.98 | Late Charge Assessment |
| 03/24/10 | | | | | | | | -$15.00 | $523,017.53 | $1,046.70 | $1,360.98 | Inspection Fee |
| 04/16/10 | | | | | | | -$174.45 | | $523,017.53 | $1,221.15 | $1,360.98 | Late Charge Assessment |
| 04/22/10 | | | | | | | | -$15.00 | $523,017.53 | $1,221.15 | $1,375.98 | Inspection Fee |
| | | | | | | | | | $523,017.53 | $1,221.15 | $1,375.98 | Totals |

## PROOF OF SERVICE

I, Gretchen Grant, declare as follows:

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660. I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On September 9, 2010, I served the within **DECLARATION OF ERIN HIRZEL-ROESCH OF WELLS FARGO BANK, N.A. IN OPPOSITION TO PRELIMINARY INJUNCTION** on all interested parties in this action as follows:

[x]  by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**Stephen Foos**
3115 Acanto Place
Redding, CA 96003
(530) 710-2732
Plaintiff In Pro Per

[ ]  (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]  (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]  (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine. Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[x]  (BY OVERNIGHT EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by OverNight Express with the delivery fees provided for.

[x]  (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on  September 9, 2010, at Newport Beach, California.

Gretchen Grant

-1-