1  WRIGHT, FINLAY & ZAK, LLP
   T. Robert Finlay, Esq., SBN 167280
2  Jonathan D. Fink, Esq. SBN 110615
   Magdalena D. Kozinska, Esq.  SBN 258403
3  4665 MacArthur Court, Suite 280
   Newport Beach, California 92660
4  Tel. (949) 477-5050; Fax (949) 477-9200
   rfinlay@wrightlegal.net; jfink@wrightlegal.net; mkozinska@wrightlegal.net
5
6  Attorneys for Defendants,
7  WELLS FARGO BANK, N.A., erroneously sued as WELLS FARGO HOME MORTGAGE,
   INC.
8

9
                    UNITED STATES DISTRICT COURT
10
                    EASTERN DISTRICT OF CALIFORNIA
11

12

13  STEPHEN FOOS, an individual,            )  Case No.: 2:10-cv-02201-FCD-CMK
                                            )
14                        Plaintiff,        )  [Assigned to the Hon. Frank C. Damrell, Jr.]
                                            )
15        vs.                               )
                                            )  **NOTICE OF MOTION AND MOTION**
16  WELLS FARGO HOME MORTGAGE, INC.         )  **TO DISMISS COMPLAINT;  MOTION**
                                            )  **FOR A MORE DEFINITE**
17                        Defendant.        )  **STATEMENT; AND MOTION TO**
                                            )  **STRIKE PUNITIVE DAMAGES**
18                                          )
                                            )
19                                          )  **[(FRCP RULE 12(b)(6), (e) and (f)]**
                                            )
20                                          )  Date:    October 22, 2010
                                            )  Time:    10:00 a.m.
21                                          )  Ctrm.:   "2"
                                            )
22                                          )
                                            )  Complaint filed: August 16, 2010
23                                          )
                                            )  *[Filed Concurrently with Request for*
24                                          )  *Judicial Notice in Support Thereof]*
                                            )
25                                          )
                                            )
26                                          )

27

28

                                    1

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE CLERK OF THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, IF ANY.  PLEASE TAKE NOTICE** that on October 22, 2010, at 10:00 a.m.. or as soon thereafter as the matter may be heard in the above-entitled Court, located at 501 I Street, Courtroom 2, Sacramento, California 95814, Defendant WELLS FARGO BANK, N.A., erroneously sued as WELLS FARGO HOME MORTGAGE, INC. ("Wells Fargo" or "Movant") will move the Court, pursuant to FRCP Rule 12 (b)(6) to Dismiss the Complaint for failure to state a claim upon which relief can be granted on the grounds that, after reviewing the non-conclusive allegations of the Complaint, Plaintiff has failed to plead essential facts which give rise to his claims and/or the claims are barred (1) on their face and/or (2) as a result of matter which may properly be judicially noticed by the Court.

**PLEASE TAKE FURTHER NOTICE** that, in the alternative, Wells Fargo moves for an order requiring Plaintiff to provide a more definite statement of his claims pursuant to FRCP Rule 12(e) where a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response, as well as for an Order, pursuant to FRCP Rule 12(f), striking the following contained in the Complaint:

1.     Prayer, lines 20-21: "For punitive damages according to proof at trial in an amount equal to $1,998,916.44."

2.     Prayer, line 22: "For attorney's fees and costs as provided by statute."

The Movant moves to strike this request on the grounds that:

1.     Plaintiff's allegations are not sufficient to demonstrate that Movant has engaged in and conduct, malice, oppression or fraud, warranting an award of punitive damages; and

2.     Plaintiff is not entitled to recover punitive damages under any of the theories he has pled.

///

///

///

2

1      These Motions will be based upon this Notice, the attached memorandum of points and

2 authorities as well as the attached Complaint, the complete files and records in this action, the

3 documents of which this Court is being requested to take judicial notice, the oral argument of

4 counsel and such other and further evidence as the Court might deem proper.

5

6                                Respectfully submitted,

7                                WRIGHT, FINLAY & ZAK, LLP

8

9 Dated:  September 16, 2010       By:    */s/Magdalena D. Kozinska*
                                      Magdalena D. Kozinska, Esq.

10                               Jonathan D. Fink, Esq.
                              Attorney for Defendant,

11                               WELLS FARGO BANK, N.A,
                              erroneously sued as WELLS FARGO

12                               HOME MORTGAGE, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1

2

**TABLE OF CONTENTS**

Page No.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      INTRODUCTION…………………………………………………...…..……...1

II.     STATEMENT OF FACTS………………………………...…………...………1

IV.     THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM UPON WHICH RELIEF MAY BE GRANTED………………………………...3

        A.      The Standards To Be Applied To A Motion to Dismiss…………………………3

        B.      Analysis of Claims………………………………………………4

                a. General Statements………………………………………………6

                b. Equitable Tolling…………………………………………………6

                c. Causes of Action…………………………………………………8

                        i.      *Each Law Claim and the TILA Claim is Barred for Plaintiff's*
                                *Failure to Comply with the Doctrine of Tender*…………………………8

                        ii.     *Breach of Fiduciary Duty*……………………………………..……………… 8

                        iii.    *Negligence/Negligence Per Se*…………………………………..………10

                                1.   *Negligence*……………………………………..………………….....10

                                2.   *Negligence Per Se*………………………………..………………10

                        iv.     *Agent: Common Law Fraud*…………………………………………......12

                        v.      Breach of the Implied Covenant of Good Faith and Fair Dealing…13

                        vi.     *Violation of Truth in Lending Act 15 USC§ 1601 et seq*……………15

                        vii.    *Intentional Infliction of Emotional Distress*…………………………16

IV.     ALTERNATIVELY, A MORE DEFINITE STATEMENT OF THE COMPLAINT
        IS REQUIRED…………………………………………………………17

V.      IMMATERIAL, IMPERTINENT OR SCANDALOUS ALLEGATIONS BE
        STRIKEN…………………………………………………………………18

VI.     CONCLUSION………………………………………………...……...19

i

# TABLE OF AUTHORITIES

**Page No.**

## Cases

*Abdallah v. United Savings Bank*
  43 Cal.App.4th 1101, 1109 (1996) ................................................................ 8

*Allen v. Ramsay*
  *179 Cal.App.2d 843, 848, (1960.* ............................................................... 12

*American Mortgage Network, Inc. v. Shelton*
  *486 F.3d 815,* (4th Cir. 2007) ................................................................. 9

*Arnolds Mgm't Corp. v. Fisher*
  158 Cal.App.3d 575, 578-579 (1984) ........................................................ 8

*Ashcroft v. Iqbal*
  565 US __, 129 S.Ct. 1937, 1953 (2009).................................................. 3, 4

*Balistreri v. Pacifica Police Department*
  901 F.2d 696, 699 (9th Cir. 1990) ........................................................... 3

*Bell Atlantic Corp. v. Twombly*
  127 S. Ct. 1955, 1965 (2007)................................................................... 3

*Branch v. Homefed Bank*
  6 Cal.App.4th 793, 800-01(1992) ........................................................... 17

*Bureerong v. Uvawas*
  922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996) ..................................... 19

*Cal. Service Station and Auto. Repair Ass'n v. American Home Assurance Co.*
  62 Cal.App.4th 1166, 1178 (1998) .......................................................... 11

*Careau & Co. v. Security Pacific Bus. Credit, Inc.*
  222 Cal.App.3d 1371, 1399, fn. 25 (1990) ............................................. 9

*Careau & Co. v. Security Pacific Business Credit, Inc.*
  222 Cal.App.3d 1371, 1398-1401(1990) ................................................. 14

*Christensen v. Superior Court*
  54 Cal.3d 868, 903 (1991) ....................................................................... 16

*Clegg v. Cult Awareness Network*
  18 F.3d. 752, 754-55 (9th Cir. 1994) .................................................... 4

*Conley v. Gibson*
  355 U.S. 41, 45-46 (1957) ....................................................................... 3

*Davidson v. City of Westminster*
  32 Cal.3d 197, 209 (1982) ....................................................................... 16

ii

*DiRosa v. Showa Denko K.K.*
    44 C.A.4[th] 799, 808 (1996). ........................................................................ 11

*Dodd v. Citizens Bank of Costa Mesa*
    222 Cal.App.3rd 1624, 1627 (1990) ............................................................. 6

*Downey v. Humphreys*
    102 Cal.App.2d 323, 332 (1951). .................................................................. 9

*Earnhardt v. Puerto Rico*
    691 F.2d 69, 71 (1st Cir. 1982) ..................................................................... 6

*Elxsi v. Kukje America Corp.*
    672 F.Supp. 1294, 1299 (N.D.CA 1987) .................................................... 14

*Erlich v. Menezes*
    21 Cal.4th 543, 555(1999) .......................................................................... 17

*F.P.B.I. Rehab 01 v. E&G Investments, Ltd.*
    (1989) 207 Cal.App.3d 1018, 1021 ............................................................... 8

*Famolare, Inc. v. Edison Bros. Stores, Inc.*
    525 F. Supp. 940, 949 (E.D. Cal. 1981) ..................................................... 17

*Fantasy, Inc. v. Fogerty*
    984 F.2d 1524, 1528 (9th Cir. 1993), ......................................................... 18

*Fletcher v. Western Life Insurance Co.*
    10 Cal.App.3d 376, 397(1970) .................................................................... 16

*Fogerty v. Fantasy, Inc.*
    510 U.S. 517 (1994) ..................................................................................... 18

*Foley v. Interactive Data Corp.*
    47 Cal.3d 654, 682-700 (1988). .................................................................. 14

*FRA S.P.A v. Surg-O-Flex of America*
    415 F. Supp. 421, 427 (S.D.N.Y. 1976) ..................................................... 17

*Frederick v. Koziol*
    772 F. Supp. 1019 (E.D. Va. 1990) ............................................................ 18

*Freeman & Mills, Inc. v. Belcher Oil Co.*
    11 Cal.4th 85, 102-03(1995)....................................................................... 14

*Holland v. Morse Diesel Intern, Inc.*
    86 Cal.App.4[th] 1443, 1447 (2001) .............................................................. 6

*Homestead Sav. v. Darmiento*
    230 Cal. App. 3d 424, 432-433 (1991) ......................................................... 6

iii

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

*Ivey v. Board of Regents*
   673 F.2d 266, 268 (9th Cir. 1982) ....................................................................... 3

*Johnson v. Honeywell Intern. Inc.*
   179 Cal.App.4th 549, 555 (2009) ..................................................................... 11

*Karlsen v. American Savings & Loan Assoc.*
   15 Cal.App.3d 112, 117 (1971) ........................................................................ 8

*Kim v. Sumitomo Bank of California*
   17 Cal.App.4th 974 (1993) .............................................................................. 9

*Kim v. Sumitomo Bank of California*
   17 Cal.App.4th 974, 981(1993) ........................................................................ 9

*King v. California*
   784 F.2d 910, 913-15 (9th Cir. 1986), <u>cert. denied</u>, 484 U.S. 802 (1987)........................ 6, 15

*Ladd v. County of San Mateo*
   12 Cal.4th 913, 917 (1996) ......................................................................... 10, 12

*Lee v. Bank of America*
   218 Cal.App.3d 914, 920 (1990) ...................................................................... 17

*Maggio v. Gerard Freezer & Ice Co.*
   824 F.2d 123, 127 (1st Cir. 1987)...................................................................... 7

*McCarthy v. Mayo*
   827 F.2d 1310, 1316 (9th Cir. 1987) ................................................................... 3

*Merenda v. Superior Court*
   3 Cal.App.4th 1, 8-11(1992)......................................................................... 17

*Millard v. Biosources, Inc.*
   156 Cal.App.4th 1338, 1353, fn. 2 (2007)............................................................. 11

*Mitsui Manufacturers Bank v. Superior Court*
   212 Cal.App.3d 726, 730-33 (1989) ................................................................... 14

*Moallem, supra at 1832.* ..................................................................................... 19

*Moeller v. Lien,*
   25 Cal. App. 4th 822, 834 (1994) ..................................................................... 6

*Morse v. Crocker National Bank*
   142 Cal.App.3d 228, 232 (1983) ...................................................................... 6

*Nesovic v. United States*
   71 F.3d 776, 778 (9th Cir. 1995) ..................................................................... 15

iv

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

*Nevijel v. North Coast Life Insurance Co.*
651 F.2d 671, 673-74 (9th Cir. 1981) ................................................. 5

*Nymark v. Heart Federal Savings & Loan Association*
231 Cal.App.3d 1089, 1096 (1991) ...................................................... 9

*Price v. Wells Fargo Bank*
213 Cal.App.3d 465, 476-79 (1989) ..................................................... 9

*Price v. Wells Fargo Bank*
213 Cal.App.3d 465, 476 (1989) ......................................................... 14

*Quelimane Co., Inc. v. Stewart Title Guar. Co.*
19 Cal.4th 26, 47 (1998). ................................................................... 5

*Quiroz v. Seventh Ave. Center*
45 Cal.Rptr.3d 222 (App. 6 Dist. 2006)............................................... 11

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530, 533-534 (9th Cir. 1984) ................................................. 3

*Rosales v. Citibank*
133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001) ........................................ 18

*Ross v. Creel Printing & Publishing Co., Inc.,*
100 Cal. App. 4th 736, 745 (2002) ....................................................... 17

*Salois v. The Dime Sav. Bank of N.Y.*
128 F.3d. 20, 25, 26 (1st Cir. 1997)................................................... 6, 7

*Scafindi v. Western Loan and Building Company*
72 Cal. Ap.2d 550, 553, 558 (1946). ................................................... 12

*Shah v. County of Los Angeles*
797 F.2d 743, 745 (9th Cir. 1986) ...................................................... 3

*Sierra-Bay Fed. Land Bank Assn. v. Superior Court*
227 Cal.App.3d 318, 333 (1991) ......................................................... 11

*Simmons v. Peavy-Welsh Lumber Co.*
113 F.2d 812, 813 (5th Cir. 1940) ...................................................... 3

*Software Design & App. Ltd. v. Hoelter & Arnett, Inc.*
56 Cal.Rptr.2d 756, 760..................................................................... 9

*Spencer v. DHI Mortgage Company, LTD*
642 F.Supp.2d 1153, 1161 (2009) ....................................................... 9

*State of California v. State Lands Comm.*
512 F.Supp. 36, 38 (N.D. Cal. 1981) ................................................... 18

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Student Loan Mktg. Ass'n*
  181 F.R.D 629, 639 (S.D. Cal. 1998) ............................................................ 3

*Sutherland v. Barclays American/Mortgage Corp.,*
  53 Cal.App.4th 316, 317 (1997) ............................................................... 17

*Tarmann v. State Farm Mutual Auto Insurance Company*
  *Cal.App.4th 153, 157 (1991)* ................................................................. 12

*Truck Drivers & Helpers Union v. NLR*
  993 F.2d 990, 998(1st Cir. 1993) ............................................................. 7

*United States Cold Storage v. Great Western Savings & Loan Assoc.*
  165 Cal.App.3d 1214, 1222 (1985) .......................................................... 8

*Wachtel v. West*
  476 F.2d 1062, 1065-66 (6th Cir.), *cert. denied*, 414 U.S. 874 (1973) ........... 15

*Wagner v. Benson*
  101 Cal.App.3d 27, 34-35 (1980) ............................................................. 9

*Wailua Assoc. v. Aetna Casualty & Surety Co.*
  183 F.R.D. 550, 553 and 556 (D. Hawaii 1998) ......................................... 18

*Wallis v. Superior Court*
  160 Cal.App.3d 1109, 1118 (1984) .......................................................... 14

*Ward v. Caulk*
  650 F.2d 1144, 1147 (9th Cir. 1981) ........................................................ 15

*Washington v. Baenziger*
  656 F.Supp. 1176, 1177 (N.D.C.A.  1987) ................................................. 5

*Washington v. Duty Free Shoppers*
  710 F. Supp. 1288, 1289 (N.D. Cal. 1988) ................................................. 5

*Western Mining Council v. Watt*
  643 F.2d 618, 624 (9th Cir. 1981) ............................................................. 3

*Wilkerson v. Butler*
  (E.D. Cal. 2005) 229 FRD 166, 172 .......................................................... 19

*Woodson v. Winchester*
  16 Cal.App. 472, 473 (1911) .................................................................... 12

*Xuereb v. Marcus & Millichap, Inc.*
  3 Cal. App.4th 1338, 1342 (1992) ............................................................ 19

*Yamamoto v. Bank of New York*
  329 F.3d 1167, 1171-73 (9th Cir. 2003) ................................................. 8, 9

vi

*Young v. Bank of America*
    141 Cal.App.3d 108, 114 (1983) .................................................... 16

**Statutes**

12 U.S.C. § 2614 ........................................................................... 7

15 U.S.C. § 1640(e) ....................................................................... 7

CA Civil Code § 2924(a)(1). ........................................................... 6

Civ. Code §§ 1717 ........................................................................ 19

Civ. Code, § 3294 ......................................................................... 19

Civil Code §1486, 1493, and 1495 ................................................... 8

**Other Authorities**

2 Moore's Federal Practice § 12.37[3] (3d ed. 2004) ......................... 19

5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1382; ... 18

**Rules**

FRCP Rule 12 ................................................................................ 3

*FRCP* Rule 12(b)(6) ...................................................................... 3

FRCP Rule 8 .................................................................................. 6

*FRCP* Rule 8(a)(2) ....................................................................... 3

**Treatises**

*5 Witkin, Cal. Proc, Before Trial, supra.* ........................................ 13

*5 Witkin, Cal. Proc. Before Trial (4th ed. 1997), Pleading §668, pp.123-124* .... 13

*5 Witkin, California Procedure, Third Edition, Pleadings §662, pg 111.* ... 12

Miller & Starr, *California Real Estate*, §9, 154, pp. 507-8 (2d Ed. 1989) ... 8

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

Although difficult to ascertain from the exceptionally nebulous form complaint upon which Plaintiff Stephen Foos ("Plaintiff") relies, it appears that this action arises out of Plaintiff's attempts to avoid the consequences of his default on a loan he obtained which was secured by the real property commonly known as 3115 Acanot Place, Redding, California 96003 ("Property").

Even though the Complaint purports to be a Verified Complaint, in which Plaintiff has personal knowledge of all the allegations contained therein (except for those asserted on information and belief), in reality it is actually only a more recent iteration of the sort of cookie cutter pleading which pro se litigants such as Plaintiff have been using in a bad faith effort to avoid non-judicial foreclosures when they default on their loans. A true and correct copy of a virtually identical complaint filed by Christian Silver in the United State District Court for the Central District of California as Case Number 2:10-cv-05664-PA-SS is attached as Exhibit "A" to the concurrently filed Request for Judicial Notice and is incorporated herein by reference.

**II.     STATEMENT OF FACTS**

On or about January 29, 2007, Plaintiff Stephen Foos ("Plaintiff") obtained a loan from Wells Fargo Bank, N.A.,[1] ("Wells Fargo" or "Movant") for approximately $552,000.00 ("Loan") which was secured by a Deed of Trust ("DOT") recorded against the real property commonly known as 3115Acanto Place, Redding, CA 96003 ("Property").[2] The recorded DOT shows the trustee as Fidelity National Title Insurance Company and Wells Fargo as the lender and beneficiary.

---

[1] Curiously Plaintiff does not sue Wells Fargo Bank, N.A. ("Wells Fargo") rather Plaintiff sues Wells Fargo Bank Home Mortgage, Inc. (WFHM, Inc.") which no longer exists. Wells Fargo is the original lender and both the original and current loan servicer for this Loan. Wells Fargo is the entity, responsible for the collection and servicing of this Loan for the current beneficiary. WFHM, Inc. merged into Wells Fargo in or about April 2004 well before the Foos Loan was made. Wells Fargo has a division known as Wells Fargo Home Mortgage. At no time has WFHM, Inc. been the lender or beneficiary of this Loan.
[2] A true and correct copy of the Deed of Trust is attached to the accompanying Request for Judicial Notice ("RJN") as Exhibit "1" and incorporated herein by reference.

1

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1   As Plaintiff defaulted on the Loan and failed to cure that default, duly noticed

2   foreclosure proceedings were commenced against the Property.  On October 8, 2009, First

3   American LoanStar Trustee Services ("FALTS") caused a Notice of Default and Election to Sell

4   Under Deed of Trust ("NOD") to be recorded.[3]  According to the NOD, as of January 27, 2010,

5   Plaintiff was $20,113.88 behind in payments on the Property.

6   On March 31, 2010, a document was executed whereby Wells Fargo formally named

7   FALTS as Substitute Trustee under the DOT.[4]

8   On April 13, 2010, Wells Fargo executed an Assignment of Deed of Trust, which

9   granted all beneficial interests under the DOT to US Bank National Association, as Trustee for

10   CSMC 2007-4 ("US Bank").[5]

11   When Plaintiff still failed to cure his default, a Notice of Trustee's Sale was recorded by

12   FALTS, setting the sale for May 25, 2010 at 11:00 a.m.[6]  The Trustee's Sale has been

13   postponed to September 24, 2010.

14   This lawsuit was filed on August 16, 2010 along with a Petition for Temporary

15   Injunction for a Temporary ("TRO").  On August 17, 2010, this Court issued an Order denying

16   the TRO holding that Plaintiff failed to comply with requirements of Local Rule 231,

17   specifically with respect to notice.[7]

18   Also on August 16, 2010, Plaintiff filed Motion for Preliminary Injunction which is

19   currently set to be heard on September 23, 2010 and which Wells Fargo opposed.

20   ///

21   ///

22   ///

23

24   [3] A true and correct copy of NOD is attached to the accompanying RJN as Exhibit "2" and incorporated herein by

25   reference.
     [4] A true and correct copy of Substitution is attached to the accompanying RJN as Exhibit "3" and incorporated

26   herein by reference.
     [5] A true and correct copy of Assignment is attached to the accompanying RJN as Exhibit "4" and incorporated

27   herein by reference.
     [6] A true and correct copy of the Notice of Trustee's Sale is attached to the accompanying RJN as Exhibit "5" and

28   incorporated herein by reference.
     [7] A true and correct copy of the 8/17/2010 Order is attached to the accompanying RJN as Exhibit "6" and
     incorporated herein by reference.

2

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    **III.**    <u>**THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A**</u>
2         <u>**CLAIM UPON WHICH RELIEF MAY BE GRANTED**</u>:

3    **A.**    <u>**The Standards To Be Applied To A Motion To Dismiss.**</u>

4        It is well-established that a complaint may be dismissed pursuant to *FRCP* Rule 12(b)(6)

5 if it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which

6 would entitle him to relief.[8]  Specifically, even though a "short and plain statement" of the claim

7 must be alleged,[9] a complaint may be dismissed as a matter of law under FRCP Rule 12(b)(6)

8 for (a) lack of a cognizable legal theory or (b) insufficient facts under a cognizable legal claim.[10]

9 In terms of the latter, "factual allegations must be enough to raise a right to relief above the

10 speculative level"[11] and "more than labels and conclusions, and a formulaic recitation of the

11 elements of a cause of action" must be alleged.[12]

12 Courts should dismiss any claim "that fails to plead sufficiently all required elements of a cause

13 of action."[13]

14        Also, where allegations in pleadings and the exhibits thereto conflict, the exhibits

15 control,[14] while a court may not "supply essential allegations of the claim that were not initially

16 pled."[15]  Further, when ruling on a motion to dismiss, all well-pled facts in the complaint are

17 deemed true;[16] however, conclusory allegations are disregarded.[17]  The United States Supreme

18 Court has stated that "formulaic recitation of the elements of a cause of action will not

19 suffice."[18]  A plaintiff cannot avoid this bar by clothing legal conclusions in the guise of facts to

20 take advantage of the liberality with which courts otherwise view pleadings.[19]

21

22

23    [8]*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).
   [9] *FRCP* Rule 8(a)(2).

24    [10]*Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-534 (9th Cir. 1984); see generally *Balistreri v. Pacifica Police Department,* 901 F.2d 696, 699 (9th Cir. 1990).

25    [11] *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).
   [12] *Id.*

26    [13] *Student Loan Mktg. Ass'n,* 181 F.R.D 629, 639 (S.D. Cal. 1998).
   [14] *Simmons v. Peavy-Welsh Lumber Co.* 113 F.2d 812, 813 (5th Cir. 1940).

27    [15]*Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).
   [16]*Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir. 1986).
   [17]*McCarthy v. Mayo,* 827 F.2d 1310, 1316 (9th Cir. 1987).

28    [18] *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal,* 565 U.S. __, 129 S.Ct. 1937, 1953 (2009) .
   [19] *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

3

---

NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    Thus, the liberality with which courts view pleadings cannot salvage a conclusive claim

2  unsubstantiated by transparent fact.[20]  In fact, while Courts consider facts in the complaint as

3  true on a motion to dismiss, they do not "assume the truth of legal conclusions merely because

4  they are in the form of factual allegations."[21]  In *Ashcroft v. Iqbal*, the United States Supreme

5  Court admonished that *FRCP* Rule 8 "demands more than an unadorned, the-defendant-

6  unlawfully-harmed-me accusation." [22]  The Court made clear that "threadbare recitals of a cause

7  of action's elements supported by conclusory statements" are insufficient to overcome a motion

8  to dismiss.[23]  Further, "the Court is not required to accept legal conclusions cast in the form of

9  factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[24]

10    Examining the claims for relief of the Complaint, it is apparent that each and every

11  cause of action alleged falls short of the pleading requirements to survive this Motion to

12  Dismiss.

13  **B.**    **Analysis of Claims:**

14    As an initial matter, it is difficult to ascertain from Plaintiff's thirty-one (31) page

15  Complaint, what it is that Plaintiff is accusing Wells Fargo of having done to him.  In violation

16  of FRCP Rule 8(a), the first twenty four and half (24½) pages of the Complaint consist of

17  generic statements wherein Plaintiff chastises the real estate mortgage industry as a whole.  It is

18  not until page twenty-five (25) of the Complaint that Plaintiff begins to identify his putative

19  claims for relief: (1) Breach of Fiduciary Duty, (2) Negligence/Negligence Per Se, (3) Agent;

20  Common Law Fraud, (4) Breach of the Implied Covenant of Good Faith and Fair Dealing, (5)

21  Violation of Truth in Lending Act 15 USC § 1601 et seq. and (6) Intentional Infliction of

22  Emotional Distress.  Even then, Wells Fargo is mentioned only three times in the entire

23  pleading![25]  The Complaint fails to meet the pleading requirements of FRCP Rule 8(a) in that, at

24  thirty-one (31) pages it does not provide "a short and plain statement of the claim showing that

25

26

27  [20] *Id.*
    [21] *Id.*
28  [22] *Ashcroft, supra,* 129 S. Ct. at 1949.
    [23] *Id.* at 1950.
    [24] *Clegg v. Cult Awareness Network,* 18 F.3d. 752, 754-55 (9th Cir. 1994).

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    the pleader is entitled to relief." In fact, the allegations of the Complaint are, despite their

2    length, so confusing, contradictory and rambling that defendants are not able to determine

3    precisely what its is they are alleged to have done wrong or when they are alleged to have done

4    it. This breach alone warrants dismissal of this action.[26]

5         **a.  General Statements**

6         The bulk of Plaintiff's Complaint consists of a rambling discourse on numerous, vaguely

7    conceived notions as to what the original author of this form Complaint thought the law was.

8    There is an utter absence of any specific facts, analysis or even argument which tie any of these

9    concepts to any issue actually relevant to this matter, let alone to Wells Fargo itself. Thus, for

10   example, Plaintiff complains about "Agency" but nowhere does he identify who the agent was,

11   what he did, or on whose behalf he acted. At another point, Plaintiff goes off on the bizarre

12   tangent that there is a Criminal Conspiracy but he does not allege any of its members or

13   elements, let alone address the problem that, even if there was such a Conspiracy, as a private

14   citizen he would lack the ability to prosecute that claim. In order to allege a Conspiracy, it must

15   be established that (1) the defendant had *knowledge* of and *agreed* to both the objective and

16   course of action to injure the plaintiff; (2) the wrongful act pursuant to such agreement; and (3)

17   resulting damage to plaintiff;[27] however, none of these elements have been satisfied here by the

18   Plaintiff. From all that appears in the Complaint, Wells Fargo would seem to have conspired

19   with itself but a corporation cannot conspire with its own employees.[28]

20        Plaintiff also makes the general assertion that defendant does not have standing to

21   foreclose on the Property; however, as Wells Fargo the original lender (mortgagee) and

22   beneficiary it is unclear why Plaintiff contends this to be true. California Civil Code §§ 2924 --

23

24

25

---

26   [25] Once in the Caption, once on pg.1, l.17as a Defendant and once on pg.3, l.20 as one of the group of banks which supposedly caused the current financial crisis in general.

27   [26] *Nevijel v. North Coast Life Insurance Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal with prejudice of 48 page complaint for failure to comply with Rule 8(a) and (e)); *accord Washington v. Baenziger*, 656 F.Supp. 1176, 1177 (N.D.C.A. 1987) (dismissing with leave to amend an 86 page complaint for violating Rule 8).

28   [27] *Quelimane Co., Inc. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 47 (1998).
     [28] *Washington v. Duty Free Shoppers*, 710 F. Supp. 1288, 1289 (N.D. Cal. 1988).

5

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1  2924k, provides "the comprehensive statutory framework established to govern non-judicial

2  foreclosure sales" and "is intended to be exhaustive."[29]   The statutory scheme specifically

3  provides that the foreclosure process may be conducted by the "trustee, mortgagee **or**

4  **beneficiary or any of their authorized agents.**" [emphasis added][30]  Plaintiff's contrary

5  contention has no basis in law or fact.[31]  Here, the title documents reflect that, on January 29,

6  2007, Plaintiff obtained a loan from Wells Fargo, the original beneficiary and current loan

7  servicer of the Loan, and as the agent for the current beneficiary, US Bank, has the right to

8  foreclose on the Property.

9        Moreover, Plaintiff fails to plead any facts showing that the Property is being wrongfully

10  foreclosed upon.  The mere blanket assertions used by Plaintiff are not only lacking in

11  specificity but they are also lacking in any facts whatsoever as there are no allegations of any

12  wrongdoing on the part of Wells Fargo at all.

13        **b.  <u>Equitable Tolling</u>**

14        Plaintiff claims that "the limitations period for Petitioners' Damages Claims under TILA

15  and RESPA[32] should be Equitably Tolled due to the Defendants' Misrepresentations and Failure

16  to Disclose."[33]  Although under federal law equitable tolling is applied to statutes of limitations

17  "to prevent unjust result or to maintain the integrity of a statute," courts have taken a narrow

18  view of equitable exceptions to limitations periods.[34]  The federal doctrine of fraudulent

19  concealment operates to toll the statute of limitations "where a plaintiff has been injured by

20  fraud and 'remains in ignorance of it without any fault or want of diligence or care on his

21  part.'"[35]  For Plaintiff to be successful in his argument, it must be determined that "(1) sufficient

22  facts were [not] available to put a reasonable [borrower] in plaintiff[s]' position on inquiry

23

24

---

25  [29] *Moeller, supra* at 834 ; *see also Homestead Sav. v. Darmiento*, 230 Cal. App. 3d 424, 432-433 (1991).
    [30] CA Civil Code § 2924(a)(1).

26  [31] *See Holland v. Morse Diesel Intern., Inc.*, 86 Cal.App.4[th] 1443, 1447 (2001); *Dodd v. Citizens Bank of Costa Mesa*, 222 Cal.App.3rd 1624, 1627 (1990).

27  [32] Plaintiff does not actually state a claim for RESPA in the Complaint.
    [33] See, Complaint, pg, 18, ll. 12-14.

28  [34] *Salois v. The Dime Sav. Bank of N.Y.*, 128 F.3d. 20, 25 (1st Cir. 1997) quoting, *King*, 784 F.2d at 915; see, *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir. 1982).
    [35] *Salois supra* 128 F.3d. 20, 25, quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946).

6

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1   notice of the possibility of fraud, <u>and</u> (2) plaintiff[s] exercised due diligence in attempting to

2   uncover the factual basis underlying this alleged conduct."[36]  Allegations of fraudulent

3   concealment alone do not excuse plaintiff from exercising reasonable diligence.[37]

4        Here, Plaintiff does not plead any facts whatsoever which establish that he was not in

5   possession of any facts he needed, or was not at least in a position of inquiry of the possibility

6   of fraud, or that he exercised *any* due diligence in attempting to uncover the factual basis

7   underlying the alleged conduct.  Therefore, equitable tolling is not applicable in this case.  Since

8   Plaintiff obtained the Loan from Wells Fargo in January of 2007 but did not file this action until

9   August 16, 2010, Plaintiff's action has been brought over two (2) years too late making

10  Plaintiff's claim for damages under TILA entirely time-barred by the applicable one-year statute

11  of limitations period.[38]

12       RESPA has two statutes of limitations, a one-year statute of limitations for violations of

13  sections 2607 and 2608, and a three-year statute of limitations for violations of section 2605.[39]

14  Here, Plaintiff has failed to allege which section of RESPA he contends was violated; in fact, he

15  does not actually allege a Cause of Action for any RESPA violations.  Nevertheless, similarly to

16  the TILA claims, any potential RESPA claims are time-barred on the face of the Complaint.

17

18

19

20

21

22

23

24

25

26

27

28

---

[36] *Salois*, 128 F.3d. 20, 25-26 quoting *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123, 127 (1st Cir. 1987).
[37] *Salois*, 128 F.3d. 20, 26; see, *Truck Drivers & Helpers Union v. NLR*, 993 F.2d 990, 998(1st Cir. 1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim.")
[38] 15 U.S.C. § 1640(e); see *FRCP*, Rule 12(b)(6).
[39] 12 U.S.C. § 2614

7

c. **Causes of Action**

i. *Each State Law Claim and the TILA Claim Is Barred for Plaintiff's Failure to Comply with the Doctrine of Tender.*

Further, as a matter of law, in order to challenge a foreclosure sale for any reason, or set it aside, or to bring any claim that arises from the foreclosure process, a plaintiff needs to allege proper tender.[40]  As explained in F.P.B.I. Rehab 01 v. E&G Investments, Ltd. (1989) 207 Cal.App.3d 1018, 1021:

> This rule...is based upon the equitable maxim that a court of equity will not order a useless act performed....if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.

As a condition precedent to any action challenging a foreclosure, the borrower must tender or offer to tender a sum sufficient to cure the default and absent an allegation of tender, the Complaint fails to state a cause of action.[41]

Further, the tender must have been made in *good faith*; the party making the tender must have had the *ability to perform*; and the tender must have been *unconditional*.[42]  This tender requirement has been extended to apply to "any cause of action" arising from an alleged improper foreclosure.[43]  Here, Plaintiff has failed to tender a sum sufficient to cure the default and therefore his Complaint should be dismissed as to all Causes of Action.

Similarly, the TILA claim is also barred absent Plaintiff's showing an ability and willingness to tender the amounts he obtained from Wells Fargo.[44]

ii. *Breach of Fiduciary Duty*

---

[40] *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109 (1996); see also, *United States Cold Storage v. Great Western Savings & Loan Assoc.*, 165 Cal.App.3d 1214, 1222 (1985); *Karlsen v. American Savings & Loan Assoc.*, 15 Cal.App.3d 112, 117 (1971).
[41] *Karlsen*, supra., at p. 117.
[42] See, Miller & Starr, *California Real Estate*, §9, 154, pp. 507-8 (2d Ed. 1989) and authorities cited therein; see also, Civil Code §1486 (full performance), 1493 (good faith), 1494 (unconditional) and 1495 (offeror must have ability to perform).
[43] *Karlsen*, supra., at p. 117; *Arnolds Mgm't Corp. v. Fisher*, 158 Cal.App.3d 575, 578-579 (1984).
[44] *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171-73 (9th Cir. 2003), holding that, while courts have no discretion to *alter* TILA's substantive provisions, they retain broad discretion to do so as to its procedural provisions, and that a court could require that the mortgagee's security interest did not automatically become void upon notice of rescission and that a mortgagor could be required to show proof of ability to repay the loan before

8

1    In the First Cause of Action for Breach of Fiduciary, Plaintiff claims that "Defendants

2    Agent, appraiser, trustee, Lender, et al, and each of them owed Petitioner a fiduciary duty of

3    care with respect to the mortgage loan transactions and related title activities involving the Trust

4    Property."[45]

5    However, it is well-established that a lender does not owe any fiduciary duty to its

6    borrower. "[A] financial institution owes no duty of care to a borrower when the institution's

7    involvement in the loan transaction does not exceed the...conventional role as a mere lender of

8    money...."[46] According to the Court in *Price v. Wells Fargo Bank*:

9    > It has long been regarded as 'axiomatic that the relationship between a bank and
10   > its depositor arising out of a general deposit is that of a debtor and creditor.'[47] 'A
11   > debt is not a trust and there is not a fiduciary relation between debtor and creditor
     > as such.'[48]   The same principle should apply with even greater clarity to the
     > relationship between a bank and its loan customers.[49]

12

13   California courts have determined that the relationship of a bank-commercial borrower

14   does not constitute a special relationship.[50]   The court in *Kim v. Sumitomo Bank of California*

15   upheld the concept that a lender owes no fiduciary duty to a borrower.[51]   In California, the law

16   is well established that a bank or lender has no fiduciary duty to a borrower when a borrower

17   obtains a loan through the course of an ordinary lender-borrower relationship.[52]   Lenders are not

18   even under any duty to explain the terms of loan documents to borrowers who sign them

19   without reading.[53]   Furthermore, lenders do not have a duty "to determine the borrower's ability

20   to repay the loan...The lender's efforts to determine the creditworthiness and ability to repay by

21   a borrower are for the lender's protection, not the borrowers."[54]

22

23   rescission would be ordered. *Accord American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, (4th Cir.
     2007)(noting that Yamamoto represents the majority view).
     [45] See, Complaint, pgs. 25, ll 18-20.
24   [46] *Wagner v. Benson*, 101 Cal.App.3d 27, 34-35 (1980); *Nymark v. Heart Federal Savings & Loan Association*, 231
     Cal.App.3d 1089, 1096 (1991).
25   [47] *Morse v. Crocker National Bank*,142 Cal.App.3d 228, 232 (1983).
     [48] *Downey v. Humphreys*, 102 Cal.App.2d 323, 332 (1951).
26   [49] *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476 (1989).
     [50] *Careau & Co. v. Security Pacific Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1399, fn. 25 (1990).
27   [51] *Kim v. Sumitomo Bank of California*, 17 Cal.App.4th 974 (1993).
     [52] *Software Design & App. Ltd. v. Hoelter & Arnett, Inc.*, 56 Cal.Rptr.2d 756, 760.
28   [53] *Kim v. Sumitomo Bank of California,*17 Cal.App.4th 974, 981(1993).
     [54]*Spencer v. DHI Mortgage Company, LTD*, 642 F.Supp.2d 1153, 1161 (2009).

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    Here, the relationship between Wells Fargo and Plaintiff, at least as alleged in the

2    Complaint, was nothing more, than a simple lender-borrower relationship.  Nothing else is, or

3    can be, alleged and, thus Plaintiff's claim has no merits.  Therefore, Plaintiff's cause of action

4    for Breach of Fiduciary Duty must be dismissed with prejudice as Plaintiff cannot amend the

5    Complaint to create a duty which does not exist.

6                        ### iii.  *Negligence/Negligence Per Se*

7                             #### 1.  *Negligence*

8    To plead a negligence claim, Plaintiff must allege (1) duty, (2) breach, (3) causation, and

9    (4) damages.[55]  Here, not only has Plaintiff not identified or established <u>any</u> of the elements

10   required to maintain this cause of action against Wells Fargo but there are no specific

11   allegations made against Wells Fargo anywhere in the entire Complaint.[56]  Thus, there is no

12   viable claim against Wells Fargo, and the Complaint is fatally uncertain.

13   A negligence claim presumes a duty but no duty on the part of Wells Fargo is alleged

14   here and the general rule, as explained above, is that a lender has no duty to its borrowers.

15   Moreover, there are no specific allegations as to what acts constitute the negligence or who

16   committed them, just vague mutterings of neglect.

17   In any event, any negligence claim must fail as, pursuant to Code of Civil Procedure §

18   335.1, an action for injury caused by the neglect of another must be brought within two years of

19   the injury.  Here, Plaintiff claims that "Defendants knew or in the exercise of reasonable care

20   should have known that the loan transactions involving Petitioner and others similarly situated

21   were defective, unlawful, violative of federal and state laws and regulations, and would subject

22   Petitioner to economic and non-economic harm and other detriment."[57]  In other words, his

23   injury appears to be in the making of the loan.  Since Plaintiff did not file this action until

24

25

26

27   [55] *Ladd v. County of San Mateo* 12 Cal.4th 913, 917 (1996).
     [56] Wells Fargo is in fact only mentioned three times in the entire Complaint: in the Caption, the "Parties" section
     and the "Carefully Crafted Criminal Connivance" section where Plaintiff states that "Wells Fargo Home

28   Mortgage…swooped in and convinced Americans to sell their homes, get out of their safe mortgage agreements
     and speculate with the equity they had gained by purchasing homes they could not afford."
     [57] See, Complaint, pg 26, ll 14-17.

                                        10

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    August 16, 2010, over 3 years after he obtained the loan from Wells Fargo in January 2007, the

2    claim of negligence is clearly barred by the statute of limitations.

## 2. *Negligence Per Se*

4         Evidence Code § 669 creates a presumption of negligence where a defendant "(1) ...

5    violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately

6    caused death or injury to person or property; (3) The death or injury resulted from an occurrence

7    of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The

8    person suffering the death or the injury to his person or property was one of the class of persons

9    for whose protection the statute, ordinance, or regulation was adopted.[58] The doctrine of

10   negligence per se is not a separate cause of action, but creates an evidentiary presumption that

11   affects the standard of care in a cause of action for negligence."[59] Following established case

12   law, the statute classifies the presumption as one affecting the burden of proof.[60]

13        "[A]n underlying claim of ordinary negligence must be viable before the presumption of

14   negligence of Evidence Code § 669 can be employed."[61] The negligence per se doctrine assists

15   as evidence to prove negligence. "[I]t is the tort of negligence, and not the violation of the statute

16   itself, which entitles a plaintiff to recover civil damages.  In such circumstances the plaintiff is

17   not attempting to pursue a private cause of action for violation of the statute; rather, he is

18   pursuing a negligence action and is relying upon the violation of a statute, ordinance, or

19   regulation to establish part of that cause of action."[62] As explained above, to plead a negligence

20   claim, Plaintiffs must allege: (1) duty, (2) breach, (3) causation, and (4) damages.[63] A

21   negligence claim presumes a duty but no duty on the part of Wells Fargo is alleged here and the

22   general rule, as explained above, is that a lender has no duty to its borrowers.  Therefore,

23   Plaintiff's Negligence Per Se Claim must be dismissed without leave to amend.

24

25   _____

26   [58] *Johnson v. Honeywell Intern. Inc.,* 179 Cal.App.4th 549, 555 (2009); See also, *Quiroz v. Seventh Ave. Center* 45 Cal.Rptr.3d 222 (App. 6 Dist. 2006).

27   [59] *Johnson v. Honeywell Intern. Inc.,* 179 Cal.App.4th 549, 555 (2009) quoting *Millard v. Biosources, Inc.* 156 Cal.App.4th 1338, 1353, fn. 2 (2007).

     [60] See, *DiRosa v. Showa Denko K.K.* 44 C.A.4th 799, 808 (1996).

28   [61] *Cal. Service Station and Auto. Repair Ass'n v. American Home Assurance Co.,* 62 Cal.App.4th 1166, 1178 (1998).

     [62] *Sierra-Bay Fed. Land Bank Assn. v. Superior Court,* 227 Cal.App.3d 318, 333 (1991).

11

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

### iv. *Agent: Common Law Fraud*

It is, of course, unclear to whom this claim is actually directed since no "agent" is identified in the Complaint. In any event, Fraud actions have been classified as "disfavored," and are *subject to strict requirements of particularity and pleading*. Allegations of fraud involve a serious attack on character, and fairness to Wells Fargo (presuming it is the intended target) demands that it should receive the fullest of details of the charge in order to prepare its defense.[64] Here, Plaintiff has wholly failed to plead the specific facts, or any facts at all, necessary to satisfy the strict pleading standard required for a fraud claim against Wells Fargo.

The rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) general pleading of the legal conclusion of "fraud" is insufficient; the facts constituting that fraud must be alleged; (b) every element of the Plaintiff's cause of action for fraud must be alleged in the proper manner (i.e. factually and specifically), and the policy of liberal construction of the pleadings will not ordinarily be invoked to sustain a pleading defective in any material respect.[65] It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called on to answer, and to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud.[66]

The requisite elements to a tort cause of action for fraud and deceit are: (1) Representation; (2) Falsity; (3) Knowledge of falsity; (4) Intent to deceive; and (5) Reliance which results in damage.[67] The requirements for pleading fraud **against a *corporation are even more stringent.*** The requirement of specificity in a fraud action against a corporation requires the Plaintiff to allege the names of the persons who performed the allegedly fraudulent conduct, their authority, and when it was performed, none of which is alleged here.[68]

---

[63] *Ladd v. County of San Mateo* 12 Cal.4th 913, 917 (1996).
[64] *Scafindi v. Western Loan and Building Company,* 72 Cal. Ap.2d 550, 553 (1946).
[65] *Scafindi, supra* at558; *See* discussion at *5 Witkin, California Procedure, Third Edition, Pleadings* §662, pg 111.
[66] *Woodson v. Winchester,* 16 Cal.App. 472, 473 (1911) ; *Allen v. Ramsay, 179 Cal.App.2d 843, 848, (1960.*
[67] *See* discussion at *5 Witkin, Cal. Proc. Before Trial (4th ed. 1997), Pleading* §668, pp.123-124.
[68] *Tarmann v. State Farm Mutual Auto Insurance Company Cal.App.4th 153, 157 (1991).*

12

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    The focus of this claim appears to be that "Agent acted in concert and collusion with

2 others named herein in promulgating false representations to cause Petitioner to enter into the

3 Loan without knowledge or understanding of the terms thereof."[69]  However, there are no

4 specific allegations through which Plaintiff established, or can establish, any fraud as to Wells

5 Fargo.  Again, it is even unclear who the "Agent" is that Plaintiff is referencing.

6    Furthermore, Plaintiff also failed to establish how he relied upon the alleged fraud by

7 Wells Fargo or how he was damaged by his reliance as is required for fraud causes of action.[70]

8 In fact, Plaintiff simply states that "Agents made these representations with the intention of

9 inducing Petitioner to act in reliance on these representations..."[71]  Once again, Plaintiff fails to

10 identify who the "Agents" were, what their representations were, when and how they were

11 made, what he did in reliance on them or how he was damaged thereby.

12    Finally, "an action for relief on the ground of fraud" must be brought within three years

13 from discovery of the fraud.[72]  Here, as explained above, Plaintiff claims that Agent made "false

14 representations to cause Petitioner to enter into the Loan without knowledge or understanding of

15 the terms thereof."[73]  The loan terms would have been obvious from the face of the Loan

16 documents and from the payments Plaintiff commenced making.  Since Plaintiff did not file this

17 action until August 16, 2010, over three (3) years after he obtained the loan from Wells Fargo in

18 January 2007, the claim of Fraud is clearly barred by the three year statute of limitations.

19    **v.   *Breach of the Implied Covenant of Good Faith and Fair Dealing***

20    Under California law, a viable claim for breach of the implied covenant of good faith

21 and fair dealing must allege five characteristics, which are not satisfied here: 1) inherently

22 unequal bargaining power; 2) non-profit motive for entering into the contract; 3) inadequacy of

23 ordinary contract damages; 4) special vulnerability on the part of plaintiff due to the harm it

24

25

26

27  [69] See, Complaint, pg, 27, ll 14-16.
   [70] *See discussion at 5 Witkin, Cal. Proc, Before Trial, supra.*.

28  [71] See, Complaint, pg  27, ll 5-7.
   [72] California Code of Civil Procedures §338(d)
   [73] See, Complaint, pg, 27, ll 14 16.

13

1    would suffer from non-performance by other party; and 5) other party's awareness of this

2    vulnerability.[74]  The Complaint here satisfies none of these requirements.

3          Further, the viability of such claims outside the insurance context is suspect.  In *Foley v.*

4    *Interactive Data Corp.*,[75] the California Supreme Court gave a clear indication of its belief that,

5    while an implied covenant of good faith and fair dealing might still subsist in every contract,

6    outside of the insurance context, its breach would only give rise to contract damages.[76]

7    Although *Foley* itself involved a wrongful termination case, several cases have noted the *Foley*

8    decision ought to apply to virtually any other business relationship other than that of insurer and

9    insured—particularly it has been applied in the context of the lender borrower relationship:[77]

10          Although real parties argue the holding in *Foley* did not eliminate tort liability
           for the breach of the covenant of good faith and fair dealing in the commercial
11          contract context of this case, the plain fact is such an action never existed.  Even
           the pre-*Foley* appellate decisions which have applied the doctrine in the
12          employment context did so by finding the characteristics of an employee/
           employer relationship were roughly equivalent to those found in the fiduciary
13          relationship between an insured and its insurer.[78]

14

15          Indeed, in *Careau & Co. v. Security Pacific Business Credit, Inc.*,[79] the court found that

16    this cause of action probably no longer existed in the context of ordinary commercial

17    transactions:

18          From this history, it seems clear to us that the recognition of a tort remedy for a
           breach of the implied covenant in a noninsurance contract has little authoritative
19          support.  In fact, with but one arguable exception (see fn. 25) and apart from
           decisions disapproved by *Foley*, every case which has considered the issue has
20          rejected the recognition of a special relationship between specific contracting
           parties.[80]

21

22

23

24   _____
     [74] *Wallis v. Superior Court* 160 Cal.App.3d 1109, 1118 (1984); *Elxsi v. Kukje America Corp.* 672 F.Supp. 1294,
     1299 (N.D.CA 1987) (and cases cited therein).
25   [75] *Foley v. Interactive Data Corp.*,47 Cal.3d 654, 682-700 (1988).
     [76] Despite this clear principal, the complaint here seeks tort damages [Complaint ¶ 83].
26   [77] *Price v. Wells Fargo Bank* 213 Cal.App.3d 465, 476-79 (1989); *Mitsui Manufacturers Bank v. Superior Court*
     212 Cal.App.3d 726, 730-33 (1989).
27   [78] *Mitsui Manufacturers Bank, supra*, at 732-33.  *See also Freeman & Mills, Inc. v. Belcher Oil Co.* 11 Cal.4th 85,
     102-03(1995)  (eliminating the tort of bad faith denial of contract on the basis that contractual wrongs should not
28   give rise to tort remedies)
     [79] *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1398-1401(1990).
     [80] Id at 1399.

                                                    14

_____

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1   Although the court in *Careau & Co.*, out of an abundance of caution, applied the five

2   part test announced in *Wallis,* and the modified version thereof in *Mitsui Manufacturers Bank*, it

3   came to the inevitable conclusion that: "Under no reasonable perspective of the facts in this

4   case would the *Wallis/Mitsui* standards be satisfied....[T]he 'transaction involved here is the

5   quintessentially ordinary arms-length commercial transaction between two parties of equal

6   bargaining strength, breaches of which are adequately remedied by ordinary contract damages.'"

7   As in *Careau*, the allegations of the Complaint here satisfy <u>none</u> of the factors identified

8   by the California courts as prerequisites to a cause of action for breach of the implied covenant

9   of good faith and fair dealing even assuming the viability of this legal theory outside of the

10  insurance context.

11  **vi.   *Violation of Truth in Lending Act 15 USC § 1601 et seq.***

12  First and foremost, under 15 USC § 1640(e), any claim for damages for any TILA

13  violation must have been brought within one year from the date of that violation.  In *King v.*

14  *California*,[81] the court was faced with alleged violations of TILA's non-disclosure provisions.

15  Here, the alleged non-disclosures were in connection with loans which were entered into more

16  than four year prior to the filing of the complaint.  The *King* court rejected "the 'continuing

17  violation' theory as unrealistically open-ended.  It exposes the lender to a prolonged and

18  unforeseeable liability that Congress did not intend."[82]  In any event, in order to utilize the

19  continuing violation argument, a plaintiff must allege continual wrongful acts, not merely

20  continual ill effects from the original violation.[83]  Furthermore, here, as stated above, Plaintiff

21  has failed to allege circumstances which would suspend the limitation period until borrower

22  discovered the alleged fraud or nondisclosures that form the basis of the TILA action.

23  Furthermore, Plaintiff brings his suit under 15 USC §1601, et seq. without identifying

24  any actual section of TILA which he contends was violated here.  Wells Fargo is not required to

25

26  [81] *King v. California*, 784 F.2d 910, 913-15 (9th Cir. 1986), <u>cert. denied</u>, 484 U.S. 802 (1987).

27  [82] Id. at 914.
    [83] *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)*; accord Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir.

28  1995).  *See also v. West*, 476 F.2d 1062, 1065-66 (6th Cir.), *cert. denied*, 414 U.S. 874 (1973), (in a TILA damages
    action, one year period commenced to run at the inception of the transaction, when the requisite disclosure was first
    not made; it did not continue so long as the disclosure remained unmade); *accord King, supra*, at 913-14.

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1   guess the conduct for which it is sought to be held liable and not all sections of TILA give rise

2   to a claim for relief.

3           **vii.**    ***Intentional Infliction of Emotional Distress***

4        The tort of Intentional Infliction of Emotional Distress ("IIED") requires pleading (1)

5   extreme and outrageous conduct by the defendant with the intention of causing, or reckless

6   disregard of the probability of causing, emotional distress, (2) the Plaintiff's suffering severe or

7   extreme emotional distress, (3) and actual and proximate causation of the emotional distress by

8   the defendant's outrageous conduct.[84]  Conduct to be outrageous must be so extreme as to

9   exceed all bounds of decency usually tolerated in a civilized community.[85] Severe emotional

10  distress is emotional distress of such substantial quantity or enduring quality that no reasonable

11  man in a civilized society should be expected to endure it.[86]

12       In his IIED cause of action, Plaintiff does not plead any facts to support his conclusory

13  allegations that "Defendants either knew that their conduct would cause Petitioner to suffer

14  severe emotional distress, or acted in conscious and/or reckless disregard of the probability that

15  such distress would occur."[87]  Instead, Plaintiff concludes that "the conduct committed by

16  Defendants, driven as it was by profit at the expenses of increasingly highly leveraged and

17  vulnerable consumer who placed their faith and trust in the superior knowledge and position of

18  Defendants, was extreme and outrageous and not to be tolerated by civilized society."[88]  At no

19  point in the Complaint does Plaintiff actually identify what Wells Fargo did which equated to

20  extreme and outrageous conduct.

21       Indeed, in cases in which the loss allegedly resulting from the tort claim is purely

22  financial, recovery for attendant emotional distress may be had only if the emotional injury

23  suffered is "severe, i.e., substantial or enduring as distinguished from trivial or transitory."[89]

24

---

25  [84] *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

26  [85] *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (1982).

   [86] *Fletcher v. Western Life Insurance Co.*, 10 Cal.App.3d 376, 397(1970).

27  [87] See, Complaint, Opp. pg 30, ll 8-10.

   [88] See, Complaint, Opp. pg 30, ll 3-6.

28  [89] *Young v. Bank of America*, 141 Cal.App.3d 108, 114 (1983) . *See also Perati v. Atkinson*, 213 Cal.App.2d 472, 474 (1963) .

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1    More importantly, in *Erlich v. Menezes*,[90] the California Supreme Court confirmed that

2    emotional distress damages are unavailable in cases arising from solely financial injury, and that

3    "[n]o California case has allowed recovery for emotional distress arising solely out of property

4    damage."[91]   Similarly, in the context of debt collection, courts acknowledge that "collection of a

5    debt by its very nature often causes the debtor to suffer emotional distress," however, this

6    distress alone is not actionable.[92]

7         Beyond this, where, as here, there is no physical impact or injury on the part of

8    Defendants, the claim is *per se* insufficient, particularly where the conduct with which a

9    defendant is charged is neither "extreme" nor "outrageous."[93]   Plaintiff has not pled sufficient

10   facts to give rise to any underlying tort against Wells Fargo and, thus, his claim for intentional

11   infliction of emotional distress cannot stand.

12   **IV.   ALTERNATIVELY, A MORE DEFINITE STATEMENT OF THE**
13       **COMPLAINT IS REQUIRED**

14   *FRCP* Rule 12(e) states in part:

15       If a pleading to which a responsive pleading is permitted is so vague or ambiguous
         that a party cannot reasonably be required to frame a responsive pleading, the party
16       may move for a more definite statement.

17       A motion for more definite statement will be granted where the complaint does not

18   apprise the defendant of the substance of the claim being asserted.[94] A *FRCP* Rule 12(e) motion

19   is proper where the complaint is so indefinite that the defendant cannot ascertain the nature of

20   the claim being asserted and is therefore unable to frame a proper response.[95]

21   ////

22

23

24

25   [90] *Erlich v. Menezes,* 21 Cal.4th 543, 555(1999).
26   [91] *See also Sutherland v. Barclays American/Mortgage Corp.,* 53 Cal.App.4th 316, 317 (1997) (rejecting claim of
     negligent infliction).
27   [92] *Ross v. Creel Printing & Publishing Co., Inc.,*100 Cal. App. 4th 736, 745 (2002) .
     [93] *Branch v. Homefed Bank,* 6 Cal.App.4th 793, 800-01(1992); *Merenda v. Superior Court,* 3 Cal.App.4th 1, 8-
28   11(1992); *Lee v. Bank of America,* 218 Cal.App.3d 914, 920 (1990).
     [94] *FRA S.P.A v. Surg-O-Flex of America,* 415 F. Supp. 421, 427 (S.D.N.Y. 1976).
     [95] *Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F. Supp. 940, 949 (E.D. Cal. 1981).

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1     As demonstrated above, there are no clear or factual allegations raised against Wells

2    Fargo which makes it impossible for Wells Fargo to respond. Thus, Plaintiff, at minimum,

3    should be required to provide a more definite statement of the entire Complaint and all of its

4    paragraphs as they relate to Wells Fargo.  As the *Frederick v. Koziol*[96] court held, it is only in

5    situations where the complaint gives the defendant <u>fair notice of the claims</u> against him, that a

6    motion for more definite statement will be denied.[97] Since there are no factual allegations against

7    Wells Fargo in the entire Complaint, Wells Fargo is prejudiced by not knowing how to respond

8    since it does not adequately understand what it is called on to answer.  Therefore, the Court

9    should grant the Motion for a More Definite Statement pursuant to *FRCP* Rule 12(e).

10  **V.    IMMATERIAL, IMPERTIANT OR SCANDALOUS ALLEGATIONS BE**

11       **STRICKEN**

12     Rule 12(f) permits a court to "order stricken from any pleading . . . any . . . immaterial,

13  impertinent, or scandalous matter."

> "Immaterial" matter is that which has no essential or important relationship to the
> claim for relief. . .being pleaded. . . .According to the case law, 'impertinent'
> matter consists of statements that do not pertain, and are not necessary, to the
> issues in question. . . .One test that has been advanced for determining whether an
> allegation in a pleading is immaterial or impertinent within the meaning of Rule
> 12(f) is whether proof concerning it could be received at trial; if it could not, then
> the matter is immaterial and impertinent. . . .[98]

19     A motion to strike is properly granted "for the purpose of streamlining the ultimate

20  resolution of the action and focusing the jury's attention on the real issues in the case."[99]  A

21  motion to strike is particularly appropriate where, as here, a party seeks relief not available as a

22  matter of law.[100]   Thus, requests to strike certain types of relief may be granted if "such relief is

---

[96] *Frederick v. Koziol*, 772 F. Supp. 1019 (E.D. Va. 1990).

[97] *Id.* at 1021.

[98] 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1382; *See, Wailua Assoc. v. Aetna Casualty & Surety Co.*, 183 F.R.D. 550, 553 and 556 (D. Hawaii 1998) (striking the phrase "siege warfare" as scandalous).

[99] *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd* on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *See State of California v. State Lands Comm.*, 512 F.Supp. 36, 38 (N.D. Cal. 1981) ("[W]here the motion may have the effect of making the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken").

[100] *Rosales v. Citibank*, 133 F.Supp.2d 1177, 1180 (N.D. Cal. 2001).

18

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

not recoverable under the applicable law."[101]  A punitive damages award requires a finding by clear and convincing evidence of both that a tort was committed and that oppression, fraud or malice was the impetus of that tort.[102]

Thus, Prayer, lines 20-21 of the Complaint, seeking punitive damages, should be stricken as such damages are not recoverable here because Plaintiff has failed to assert any valid claim upon which he would be entitled to punitive damages, thereby making this claim impertinent, immaterial and scandalous.

Furthermore, Plaintiff here seeks recovery of his attorney's fees in this action [Prayer to Complaint, line 22].  However, in order to obtain an award of attorney's fees, Plaintiff must allege the existence of a statute or of a contract between himself and Wells Fargo which provides for an award of attorney's fees.[103]  Here, Plaintiff does not identify any statutes which support his demand for attorney's fees as to Wells Fargo and the only possible contract which contains any fee provision is the Deed of Trust.[104]  Thus, there is no basis for fees against Wells Fargo.

Moreover, to the extent *Civil Code* §1717 establishes that even unilateral attorneys' fees provisions should be bilaterally enforced,[105] this only covers contract actions - where the theory of the case is breach of contract and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce that contract.[106]  Tort claims are not encompassed. "This restriction has for 25 years denied tort litigants the benefit of section 1717."[107]  Thus, Plaintiff's prayer for attorney's fees should be stricken.

## VI.   CONCLUSION:

Wells Fargo respectfully requests that its Motion to Dismiss Plaintiff's Complaint be sustained <u>without</u> leave to amend as it is clear, for all of the reasons set forth above, that Plaintiff has failed to state any cause of action against Wells Fargo and that giving Plaintiff an opportunity to amend his Complaint will not be of any avail since Plaintiff's claims are time-

---

[101] 2 Moore's Federal Practice § 12.37[3] (3d ed. 2004); *Wilkerson v. Butler*, (E.D. Cal. 2005) 229 FRD 166, 172; *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D. Cal. 1996).
[102] Civ. Code, § 3294.
[103] See Civ. Code §§ 1717 (providing for attorneys' fees in an action on a contract) and 1021.
[104] See RJN, Exhibit "1."
[105] *Moallem, supra* at 1832.
[106] *Id.*quoting *Xuereb v. Marcus & Millichap, Inc.* 3 Cal. App.4th 1338, 1342 (1992).
[107] *Moallem, supra* at 1832.

19

---

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

1   barred and he cannot plead facts sufficient to bring forth a viable cause of action against Wells

2   Fargo.

3                                          Respectfully submitted,

4                                          WRIGHT, FINLAY & ZAK, LLP

5   Dated:  September 16, 2010        By:   /s/Magdalena D. Kozinska
                                           Magdalena D. Kozinska, Esq.
6                                          Jonathan D. Fink, Esq.
                                           Attorney for Defendant,
7                                          WELLS FARGO BANK, N.A,
                                           erroneously sued as WELLS FARGO
8                                          HOME MORTGAGE, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

EXHIBIT "A"

Christian Silver
5639 Natick Ave
Van Nuys CA 91411
818 618-1977

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Christian Silver

Plaintiff,

vs.

Bank of America, N.A.

Chase Bank, NA

Defendant

Case # **CV10-05664**

**ORIGINAL PETITION**

Date: July 29 2010

Comes now  Christian Silver, hereinafter referred to as "Petitioner," and moves the court for relief as herein requested:

### PARTIES

Petitioner is Christian Silver,  5639 Natick Ave   Van Nuys CA 91411.  Currently Known Defendant(s) are/is: Bank of America, N.A. , 101 S. Tyron St , Charlotte , NC  28255, by and through its attorney.

### STATEMENT OF CAUSE

Petitioner,  entered  into  a  consumer  contract  for  the  refinance  of  a  primary residence located at  5639 Natick Ave   Van Nuys CA 91411, hereinafter referred to as the "property."

Defendants, acting in concert and collusion with others, induced Petitioner to enter into a predatory loan agreement with Defendant.

[Summary of pleading] - 1

CV10-05664

```
7/29/2010 4:05:36 PM  Receipt #: 143227
              Cashier : KPAGE ELA 1-11
Paid by: CHRISTIAN D SILVER
2:CV10-05664
2010-086900           5 - Civil Filing Fee(1)
Amount :                           $350.00
2:CV10-05664
2010-510000          11 - Special Fund F/F(1)
Amount :                           $190.00
2:CV10-05664
2010-086400         Filing Fee - Special(1)
Amount :                           $100.00
Credit card Payment : 1304 407253 / 350.0
0
```

Defendants committed numerous acts of fraud against Petitioner in furtherance of a carefully crafted scheme intended to defraud Petitioner.

Defendants failed to make proper notices to Petitioner that would have given Petitioner warning of the types of tactics used by Defendants to defraud Petitioner.

Defendants charged false fees to Petitioner at settlement.

Defendants used the above referenced false fees to compensate agents of Petitioner in order to induce said agents to breach their fiduciary duty to Petitioner.

Defendant's attorney caused to be initiated collection procedures, knowing said collection procedures in the instant action were frivolous as lender is estopped from collection procedures, under authority of Uniform Commercial Code 3-501, subsequent to the request by Petitioner for the production of the original promissory note alleged to create a debt.

## IN BRIEF
### *(Non-factual Statement of Posture and Position)*

It is not the intent of Petitioner to indict the entire industry.  It is just that Plaintiff will be making a number of allegations that, outside the context of the current condition of the real estate industry, may seem somewhat outrageous and counter-intuitive.

When Petitioner accuses ordinary individuals of acting in concert and collusion with an ongoing criminal conspiracy, it tends to trigger an incredulous response as it is unreasonable to consider that all Agents, loan agents, appraisers, and other ordinary people, just doing what they have been trained to do, are out to swindle the poor unsuspecting borrower.

The facts Petitioner is prepared to prove are that Petitioner has been harmed by fraud committed by people acting in concert and collusion, one with the

[Summary of pleading] - 2

other.    Petitioner has no reason to believe that the Agent, loan officer, appraiser, and others were consciously aware that what they were doing was part of an ongoing criminal conspiracy, only that it was, and they, at the very least, kept themselves negligently uninformed of the wrongs they were perpetrating.    Petitioner maintains the real culprit is the system itself, including the courts, for failure to strictly enforce the consumer protection laws.

## CAREFULLY CRAFTED CRIMINAL CONNIVANCE
### (General State of the Real Estate Industry)

### THE BEST OF INTENTIONS

Prior to the 1980's and 1990's ample government protections were in place to protect consumers and the lending industry from precisely the disaster we now experience.  During President Clinton's administration, under the guise of making housing available to the poor, primary protections were relaxed which had the effect of releasing the unscrupulous on the unwary.

Prior to deregulation in the 1980's, lenders created loans for which they held and assumed the risk.  Consequently, Americans were engaged in safe and stable home mortgages.   With the protections removed, the unscrupulous lenders swooped in and, instead of making loans available to the poor, used the opportunity to convince the unsophisticated American public to do something that had been traditionally taboo; home buyers were convinced to speculate with their homes, their most important investment.

Bank of America, N.A. , Ameriquest, Countrywide, and many others swooped in and convinced Americans to sell their homes, get out of their safe mortgage agreements, and speculate with the equity they had gained by purchasing homes they could not afford.  Lenders created loans intended to

[Summary of pleading] - 3

fail as, under the newly crafted system, the Lender profited more from a mortgage default than from a stable loan.

Companies cropped up who called themselves banks when, in fact, they were only either subsidiaries of banks, or unaffiliated companies that were operated for the purpose of creating and selling promissory notes. As will be demonstrated, these companies then profited from the failure of the underlying loans.

### HOW IT WORKS

Briefly, how it works is this, the Lender would secure a large loan from a large bank, convert that loan into 20 and 30 year mortgages and then sell the promise to pay to an investor.

People would set up mortgage companies buy securing a large loan from one of the major banks, then convert that loan into 20 and 30 year mortgages.  In order to accomplish this an Agent would contract with a seller to find a buyer, bring both seller and buyer to a lender who would secure the title from the seller using the borrowed bank funds for that purpose, and then trade the title to the buyer in exchange for a promissory note.

The lender then creates a 20 or 30 year mortgage with money the lender must repay within 6 months.   As soon as the closing is consummated, the promissory note is sold to an investor pool.

Using the instant case as an example, a 627,000.00 note at 7.0330%% interest over 30 years will produce $654,598.43    The lender can then offer to the investor the security instrument (promissory note) at say 50% of it's future value.  The investor will, over the life of the note, less approximately 3.00% servicing fees, realize $735,518.36 .  The lender can then pay back the

bank and retain a handsome profit in the amount of $154,014.35. The lender, however, is not done with the deal.

The lender signed over the promissory note to the investor at the time of the trade, but did not sign over the lien document (mortgage or deed of trust). The State of Kansas Supreme Court addressed this issue and stated that such a transaction was certainly legal. However, it created a fatal flaw as the holder of the lien document, at time of sale of the security instrument, received consideration in excess of the lien amount. Since the lien holder received consideration, he could not be harmed. Therefore the lien became an unenforceable document.

This begs the question: if keeping the lien would render it void, why would the lender not simply transfer the lien with the promissory note? The reason is because the lender will hold the lien for three years, file an Internal Revenue Service Form 1099a, claim the full amount of the lien as abandoned funds, and deduct the full amount from the lender's tax liability. The lender, by this maneuver, gets consideration a second time. And still the lender is not done profiting from the deal.

After sale of the promissory note, the lender remains as the servicer for the investor. The lender will receive 3% of each payment the lender collects and renders to the investor pool. However, if the payment is late, the lender is allowed to assess an extra 5% and keep that amount. Also, if the loan defaults, the lender stands to gain thousands for handling the foreclosure.

The lender stands to profit more from a note that is overly expensive, than from a good stable loan. And where, you may ask, does all this profit come from? It comes from the equity the borrower had built up in the home. And still the lender is not finished profiting from the deal.

[Summary of pleading] - 5

1

2

3   Another nail was driven in the American financial coffin when on the last day

4   Congress was in session in 2000 when restrictions that had been in place

5   since the economic collapse of 1907 were removed.  Until 1907 investors

6   were allowed to bet on stocks without actually buying them.  This unbridled

7   speculation led directly to an economic collapse.  As a result the legislature

    banned the practice, until the year 2000.  In 2000 the unscrupulous lenders

8   got their way on the last day of the congressional session.  Congress removed

9   the restriction banning derivatives and again allowed the practice, this time

10  taking only 8 years to crash the stock market.   This practice allowed the

11  lender to profit further from the loan by betting on the failure of the security

12  instrument he had just sold to the unwary investor, thus furthering the

13  purpose of the lender to profit from both the borrower (consumer) and the

14  investor.

15  The failure of so many loans recently resulted in a seven hundred and fifty

16  billion dollar bailout at the expense of the taxpayer.   The unsuspecting

17  consumer was lulled into accepting the pronouncements of the lenders,

18  appraisers, underwriters, and trustees as all were acting under the guise of

19  government regulation and, therefore, the borrower had reason to expect good

20  and fair dealings from all.  Unfortunately, the regulations in place to protect

    the consumer from just this kind of abuse were simply being ignored.

21

22  The loan origination fee from the HUD1 settlement statement is the finder's

23  fee paid for the referral of the client to the lender by a person acting as an

24  agent for the borrower.  Hereinafter, the person or entity who receives any

    portion of the yield spread premium, or a commission of any kind consequent

25  to securing the loan agreement through from the borrower will be referred to

26  as "Agent."  The fee, authorized by the consumer protection law is restricted

27

28

to 1% of the principal of the note.  It was intended that the Agent, when seeking out a lender for the borrower, would seek the best deal for his client rather than who would pay him the most.  That was the intent, but not the reality.  The reality is that Agents never come away from the table with less than 2% or 3% of the principal.  This is accomplished by undisclosed fees to the Agent in order to induce the Agent to breach his fiduciary duty to the borrower and convince the borrower to accept a more expensive loan product than the borrower qualifies for.  This will generate more profits for the lender and, consequently, for the Agent.

It is a common practice for lenders to coerce appraisers to give a higher appraisal than is the fair market price.  This allows the lender to increase the cost of the loan product and give the impression that the borrower is justified in making the purchase.

The lender then charges the borrower an underwriting fee in order to convince the borrower that someone with knowledge has gone over the conditions of the note and certified that they meet all legal criteria.  The trustee, at closing, participates actively in the deception of the borrower by placing undue stress on the borrower to sign the large stack of paperwork without reading it.  The trustee is, after all, to be trusted and has been paid to insure the transaction.  This trust is systematically violated for the purpose of taking unfair advantage of the borrower.  The entire loan process is a carefully crafted contrive connivance designed and intended to induce the unsophisticated borrower into accepting a loan product that is beyond the borrowers means to repay.  With all this, it should be a surprise to no one that this country is having a real estate crisis.

## PETITIONER WILL PROVE THE FOLLOWING

Petitioner is prepared to prove, by a preponderance of evidence that:

Lender has no legal standing to bring collection or foreclosure claims against the property;

Lender is not a real party in interest in any contract which can claim a collateral interest in the property;

even if Lender were to prove up a contract to which Lender had standing to enforce against Petitioner, no valid lien exists which would give Lender a claim against the property;

even if Lender were to prove up a contract to which Lender had standing to enforce against Petitioner, said contract was fraudulent in its creation as endorsement was secured by acts of negligence, common law fraud, fraud by non-disclosure, fraud in the inducement, fraud in the execution, usury, and breaches of contractual and fiduciary obligations by Mortgagee or "Trustee" on the Deed of Trust, "Mortgage Agents," "Loan Originators," "Loan Seller," "Mortgage Aggregator," "Trustee of Pooled Assets," "Trustee or officers of Structured Investment Vehicle," "Investment Banker," "Trustee of Special Purpose Vehicle/Issuer of Certificates of 'Asset-Backed Certificates,'" "Seller of 'Asset-Backed' Certificates (shares or bonds)," "Special Servicer" and Trustee, respectively, of certain mortgage loans pooled together in a trust fund;

Defendants have concocted a carefully crafted connivance wherein Lender conspired with Agents, et al, to strip Petitioner of Petitioner's

[Summary of pleading] - 8

equity in the property by inducing Plaintiff to enter into a predatory loan inflated loan product;

Lender received unjust enrichment in the amount of 5% of each payment made late to Lender while Lender and Lender's assigns acted as servicer of the note;

Lender and Lender's assigns, who acted as servicer in place of Lender, profited by handling the foreclosure process on a contract Lender designed to have a high probability of default;

Lender intended to defraud Investor by converting the promissory note into a security instrument and selling same to Investor;

Lender intended to defraud Investor and the taxpayers of the United States by withholding the lien document from the sale of the promissory note in order that Lender could then hold the lien for three years, then prepare and file Internal Revenue Form 1099a and falsely claim the full lien amount as abandoned funds and deduct same from Lender's income tax obligation;

Lender defrauded backers of derivatives by betting on the failure of the promissory note the lender designed to default;

participant Defendants, et al, in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Petitioner and others similarly situated.

## PETITIONER SEEKS REMEDY

In addition to seeking compensatory, consequential and other damages, Petitioner seeks declaratory relief as to what (if any) party, entity or individual or group thereof is the owner of the promissory note executed at

[Summary of pleading] - 9

the time of the loan closing, and whether the Deed of Trust (Mortgage) secures any obligation of the Petitioner, and a Mandatory Injunction requiring re-conveyance of the subject property to the Petitioner or, in the alternative a Final Judgment granting Petitioner Quiet Title in the subject property.

### *PETITIONER HAS BEEN HARMED*

Petitioner has suffered significant harm and detriment as a result of the actions of Defendants.

Such harm and detriment includes economic and non-economic damages, and injuries to Petitioner's mental and emotional health and strength, all to be shown according to proof at trial.

In addition, Petitioner will suffer grievous and irreparable further harm and detriment unless the equitable relief requested herein is granted.

## STATEMENT OF CLAIM
### *DEFENDANTS LACK STANDING*

#### No evidence of Contractual Obligation

Defendants claim a controversy based on a contractual violation by Petitioner but have failed to produce said contract. Even if Defendants produced evidence of the existence of said contract in the form of an allegedly accurate photocopy of said document, a copy is only hearsay evidence that a contract actually existed at one point in time. A copy, considering the present state of technology, could be easily altered. As Lender only created one original and that original was left in the custody of Lender, it was imperative that Lender protect said instrument.

In as much as the Lender is required to present the original on demand of Petitioner, there can be no presumption of regularity when the original is not so produced. In as much as Lender has refused Petitioner's request of the chain of

1
2
3   custody of the security instrument in question by refusing to identify all current
4   and past real parties in interest, there is no way to follow said chain of custody to
5   insure, by verified testimony, that no alterations to the original provisions in the
6   contract have been made.   Therefore, the alleged copy of the original is only
7   hearsay evidence that an original document at one time existed.   Petitioner
8   maintains that, absent production of admissible evidence of a contractual
9   obligation on the part of Petitioner, Defendants are without standing to invoke the
    subject matter jurisdiction of the court.

10   ### No Proper Evidence of Agency
11
12   Defendants claim agency to represent the principal in a contractual agreement
13   involving Petitioner, however, Defendants have failed to provide any evidence of
14   said agency other than a pronouncement that agency has been assigned by some
15   person, the true identity and capacity of whom has not been established.
16   Defendants can hardly claim to be agents of a principal then refuse to identify said
17   principal.   All claims of agency are made from the mouth of the agent with no
     attempt to provide admissible evidence from the principal.

18   Absent proof of agency, Defendants lack standing to invoke the subject matter
19   jurisdiction of the court.

20   ### Special Purpose Vehicle
21   Since the entity now claiming agency to represent the holder of the security
22   instrument is not the original lender, Petitioner has reason to believe that the
23   promissory note, upon consummation of the contract, was converted to a security
24   and sold into a special purpose vehicle and now resides in a Real Estate Mortgage
25   Investment Conduit (REMIC)  as defined by the Internal Revenue Code and as
26   such, cannot be removed from the REMIC as such would be a prohibited
27
28

transaction.    If the mortgage was part of a special purpose vehicle and was removed on consideration of foreclosure, the real party in interest would necessarily be the trustee of the special purpose vehicle. Nothing in the pleadings of Defendants indicates the existence of a special purpose vehicle, and the lack of a proper chain of custody documentation gives Petitioner cause to believe defendant is not the proper agent of the real party in interest.

## CRIMINAL CONSPIRACY AND THEFT

Defendants, by and through Defendant's Agents, conspired with other Defendants, et al, toward a criminal conspiracy to defraud Petitioner.  Said conspiracy but are not limited to acts of negligence, breach of fiduciary duty, common law fraud, fraud by non-disclosure, and tortuous acts of conspiracy and theft, to include but not limited to, the assessment of improper fees to Petitioner by Lender, which were then used to fund the improper payment of commission fees to Agent in order to induce Agent to violate Agent's fiduciary duty to Petitioner.

## AGENT PRACTICED UP-SELLING

By and through the above alleged conspiracy, Agent practiced up-selling to Petitioner. In so doing, Agent violated the trust relationship actively cultivated by Agent and supported by fact that Agent was licensed by the state. Agent further defrauded Petitioner by failing to disclose Agent's conspiratorial relationship to Lender,   Agent violated Agent's fiduciary duty to Petitioner and the duty to provide fair and honest services, through a series of carefully crafted connivances, wherein Agent proactively made knowingly false and misleading statements of alleged fact to Petitioner, and by giving partial disclosure of facts intended to directly mislead Petitioner for the purpose of inducing Petitioner to make decisions concerning the acceptance of a loan product offered by the Lender.  Said loan product was more expensive than Petitioner could legally afford. Agent acted with

full knowledge that Petitioner would have made a different decision had Agent given complete disclosure.

### FRAUDULENT INDUCEMENT

Lender maliciously induced Petitioner to accept a loan product, Lender knew, or should have known, Petitioner could not afford in order to unjustly enrich Lender.

### EXTRA PROFIT ON SALE OF PREDATORY LOAN PRODUCT

Said more expensive loan product was calculated to produce a higher return when sold as a security to an investor who was already waiting to purchase the loan as soon as it could be consummated.

### Extra Commission for Late Payments

Lender acted with deliberate malice in order to induce Petitioner to enter into a loan agreement that Lender intended Petitioner would have difficulty paying. The industry standard payment to the servicer for servicing a mortgage note is 3% of the amount collected. However, if the borrower is late on payments, a 5% late fee is added and this fee is retained by the servicer. Thereby, the Lender stands to receive more than double the regular commission on collections if the borrower pays late.

### Extra Income for Handling Foreclosure

Lender acted with deliberate malice in order to induce petitioner to enter into a loan agreement on which Lender intended petitioner to default. In case of default, the Lender, acting as servicer, receives considerable funds for handling and executing the foreclosure process.

[Summary of pleading] - 13

### Credit Default Swap Gambling

Lender, after deliberately creating a loan intended to default is now in a position to bet on credit default swap, commonly referred to as a derivative as addressed more fully below.  Since Lender designed the loan to fail, betting on said failure is essentially a sure thing.

### *LENDER ATTEMPTING TO FRAUDULENTLY COLLECT ON VOID LIEN*

Lender sold the security instrument after closing and received consideration in an amount in excess of the lien held by Lender.  Since Lender retained the lien document upon the sale of the security instrument, Lender separated the lien from said security instrument, creating a fatal and irreparable flaw.

When Lender received consideration while still holding the lien and said consideration was in excess of the amount of the lien, Lender was in a position such that he could not be harmed and could not gain standing to enforce the lien. The lien was, thereby, rendered void.

Since the separation of the lien from the security instrument creates such a considerable concern, said separation certainly begs a question: "Why would the Lender retain the lien when selling the security instrument?"

When you follow the money the answer is clear.  The Lender will hold the lien for three years, then file an IRS Form 1099a and claim the full amount of the lien as abandoned funds and deduct the full amount from Lender's tax liability, thereby, receiving consideration a second time.

Later, in the expected eventuality of default by petitioner, Lender then claimed to transfer the lien to the holder of the security, however, the lien once satisfied, does

not gain authority just because the holder, after receiving consideration, decides to transfer it to someone else.

### LENDER PROFIT BY CREDIT DEFAULT SWAP DERIVATIVES

Lender further stood to profit by credit default swaps in the derivatives market, by way of inside information that Lender had as a result of creating the faulty loans sure to default. Lender was then free to invest on the bet that said loan would default and stood to receive unjust enrichment a third time. This credit default swap derivative market scheme is almost totally responsible for the stock market disaster we now experience as it was responsible for the stock market crash in 1907.

### TRUTH IN LENDING STATEMENT VARIANCES

The lender defrauded Petitioner by claiming a fraudulent payment amount not consistent with the provisions of the contract entered into by Petitioner. If Petitioner paid the amount specified by the Truth in Lending Statement, instead of the amount agreed to in the promissory note created by Petitioner, Lender would have defrauded Petitioner of an amount equal to $205,738.70.

### LENDER CHARGED FALSE FEES

Lender charged fees to Petitioner that were in violation of the limitations imposed by the Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third party vendor.

Lender charged other fees that were a normal part of doing business and should have been included in the finance charge.

Below is a listing of the fees charged at settlement. Neither at settlement, nor at any other time did Lender or Trustee provide documentation to show that the fees herein listed were valid, necessary, reasonable, and proper to charge Petitioner.

| | | |
|---|---|---|
| 803 | Appraisal | $196.00 |
| 804 | Tax Service Fee | $75.00 |
| 805 | Administrative Fee | $650.00 |
| 806 | Processing Fee | $495.00 |
| 807 | Flood Cert | $11.00 |
| 901 | Interest from 5/9/06to 6/1/06 @111.660 a day | $2,568.18 |
| 904 | Fire Insurance | $766.53 |
| 1101 | Settlement or closing fee to | $1,090.00 |
| 1102 | Wire/Messenger Fee | $60.00 |
| 1201 | Recording Fee | $90.00 |

Debtor is unable to determine whether or not the above fees are valid in accordance with the restrictions provided by the various consumer protection laws. Therefore, please provide; a complete billing from each vendor who provided the above listed services; the complete contact information for each vendor who provided a billed service; clearly stipulate as to the specific service performed; a showing that said service was necessary; a showing that the cost of said service is reasonable; a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge.

The above charges are hereby disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $234,934.28  This amount will be reduced by the amount of items above when said items are fully documented.

[Summary of pleading] - 16

*RESPA PENALTY*

From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows: Good Faith Estimate not within limits, No HUD-1 Booklet, Truth In Lending Statement not within limits compared to Note, Truth in Lending Statement not timely presented, HUD-1 not presented at least one day before closing, No Holder Rule Notice in Note, No 1st Payment Letter.

The closing documents included no signed and dated :   Financial Privacy Act Disclosure; Equal Credit Reporting Act Disclosure; notice of right to receive appraisal report; servicing disclosure statement; borrower's Certification of Authorization; notice of credit score; RESPA servicing disclosure letter; loan discount fee disclosure; business insurance company arrangement disclosure; notice of right to rescind.

The courts have held that the borrower does not have to show harm to claim a violation of the Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance.  And, in as much as the courts are directed to assess a penalty of no less than two hundred dollars and no more than two thousand, considering the large number enumerated here, it is reasonable to consider that the court will assess the maximum amount for each violation.

Since the courts have held that the penalty for a violation of RESPA accrues at consummation of the note, borrower has calculated that, the number of violations found in a cursory examination of the note, if deducted from the principal, would result in an overpayment on the part of the borrower, over the life of the note, of $325,413.55.

If the violation penalty amounts for each of the unsupported fees listed above are included, the amount by which the borrower would be defrauded is $362,037.40

[Summary of pleading] - 17

Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note variance, it appears that lender intended to defraud borrower in the amount of $1,128,123.93

### LENDER CONSPIRED WITH APPRAISER

Lender, in furtherance of the above referenced conspiracy, conspired with appraiser for the purpose of preparing an appraisal with a falsely stated price, in violation of appraiser's fiduciary duty to Petitioner and appraiser's duty to provide fair and honest services, for the purpose of inducing Petitioner to enter into a loan product that was fraudulent toward the interests of Petitioner.

### LENDER CONSPIRED WITH TRUSTEE

Lender conspired with the trust Agent at closing to create a condition of stress for the specific purpose of inducing Petitioner to sign documents without allowing time for Petitioner to read and fully understand what was being signed.

The above referenced closing procedure was a carefully crafted connivance, designed and intended to induce Petitioner, through shame and trickery, in violation of trustee's fiduciary duty to Petitioner and the duty to provide fair and honest services, to sign documents that Petitioner did not have opportunity to read and fully understand, thereby, denying Petitioner full disclosure as required by various consumer protection statutes.

### DECEPTIVE ADVERTISING AND OTHER UNFAIR BUSINESS PRACTICES

In the manner in which Defendants have carried on their business enterprises, they have engaged in a variety of unfair and unlawful business practices prohibited by *15 USC Section 45* et seq. (Deceptive Practices Act).

Such conduct comprises a pattern of business activity within the meaning of such statutes, and has directly and proximately caused Petitioner to suffer economic and non-economic harm and detriment in an amount to be shown according to proof at trial of this matter.

### EQUITABLE TOLLING FOR TILA AND RESPA

The Limitations Period for Petitioners' Damages Claims under TILA and RESPA should be Equitably Tolled due to the DEFENDANTS' Misrepresentations and Failure to Disclose.

Any claims for statutory and other money damages under the Truth in Lending Act *(15 U.S.C. § 1601,* et. seq.) and under the Real Estate Settlement Procedures Act *(12 U.S.C. § 2601* et. seq.) are subject to a one-year limitations period; however, such claims are subject to the equitable tolling doctrine. The Ninth Circuit has interpreted the TILA limitations period in § 1640(e) as subject to equitable tolling. In *King v. California, 784 F.2d 910 (9th Cir.1986),* the court held that given the remedial purpose of TILA, the limitations period should run from the date of consummation of the transaction, but that "the doctrine of equitable tolling may, in appropriate circumstances, suspend the limitations period until the borrower discovers or has reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. California, 784 F.2d 910, 915 9th* Cir. 1986).

Likewise, while the Ninth Circuit has not taken up the question whether *12 U.S.C. § 2614,* the anti-kickback provision of RESPA, is subject to equitable tolling, other Courts have, and hold that such limitations period may be equitably tolled. The Court of Appeals for the District of Columbia held that § 2614 imposes a strictly jurisdictional limitation, *Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039-40 (D.C. Cir. 1986),* while the Seventh Circuit came to the opposite conclusion.

[Summary of pleading] - 19

1
2
3    *Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1164 (7th Cir.*
4    *1997).* District courts have largely come down on the side of the Seventh Circuit in
5    holding that the one-year limitations period in § 2614 is subject to equitable
6    tolling. See, e.g., *Kerby v. Mortgage Funding Corp., 992 F.Supp. 787, 791-98*
     *(D.Md.1998); Moll v. U.S. Life Title Ins. Co., 700 F.Supp. 1284, 1286-89*
7    *(S.D.N.Y.1988).* Importantly, the Ninth Circuit, as noted above, has interpreted the
8    TILA limitations period in *15 U.S.C. § 1640* as subject to equitable tolling; the
9    language of the two provisions is nearly identical. *King v. California, 784 F.2d at*
10   *914.* While not of precedential value, this Court has previously found both the
11   TILA and <u>RESPA</u> limitations periods to be subject to equitable tolling. *Blaylock v.*
12   *First American Title Ins. Co., 504 F.Supp.2d 1091,* (W.D. Wash. 2007). 1106-07.

13   The Ninth Circuit has explained that the doctrine of equitable tolling "focuses on
14   excusable delay by the Petitioner," and inquires whether "a reasonable Petitioner
15   would ... have known of the existence of a possible claim within the limitations
16   period." *Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir.2002), Santa Maria v.*
17   *Pacific Bell, 202 F.3d 1170, 1178 (9th Cir.2000).* Equitable tolling focuses on the
18   reasonableness of the Petitioner's delay and does not depend on any wrongful
     conduct by the Defendants. Santa Maria. at 1178.
19
20   *BUSINESS    PRACTICES    CONCERNING    DISREGARDING    OF*
     *UNDERWRITING STANDARDS*
21
22   Traditionally, Lenders required borrowers seeking mortgage loans to document
23   their income and assets by, for example, providing W-2 statements, tax returns,
     bank statements, documents evidencing title, employment information, and other
24   information and documentation that could be analyzed and investigated for its
25   truthfulness, accuracy, and to determine the borrower's ability to repay a particular
26   loan over both the short and long term. Defendants deviated from and disregarded
27
28

these standards, particularly with regard to its riskier and more profitable loan products.

Low-Documentation/No-Documentation Loans.

Driven by its desire for market share and a perceived need to maintain competitiveness with the likes of Countrywide, Defendants began to introduce an ever increasing variety of low and no documentation loan products, including the HARMs and HELOCs described hereinabove, and began to deviate from and ease its underwriting criteria, and then to grant liberal exceptions to the already eased underwriting standards to the point of disregarding such standards. This quickened the loan origination process, allowing for the generation of more and more loans which could then be resold and/or securitized in the secondary market.

Defendants marketed no-documentation/low-documentation loan programs that included HARMs and HELOCs, among others, in which loans were given based on the borrower's "stated income" or "stated assets" (SISA) neither of which were verified. Employment was verbally confirmed, if at all, but not further investigated, and income, if it was even considered as a factor, was to be roughly consistent with incomes in the types of jobs in which the borrower was employed. When borrowers were requested to document their income, they were able to do so through information that was less reliable than in a full-documentation loan.

For stated income loans, it became standard practice for loan processors, loan officers and underwriters to rely on www.salary.com to see if a stated income was reasonable.   Such stated income loans, emphasizing loan origination from a profitability standpoint at the expense of determining the ability of the borrower to repay the loan from an underwriting standpoint, encouraged the overstating and/or fabrication of income.

Easing of Underwriting Standards

In order to produce more loans that could be resold in the secondary mortgage market, Defendants also relaxed, and often disregarded, traditional underwriting standards used to separate acceptable from unacceptable risk. Examples of such relaxed standards were reducing the base FICO score needed for a SISA loan.

Other underwriting standards that Defendants relaxed included qualifying interest rates (the rate used to determine whether borrowers can afford the loan), loan to value ratios (the amount of loan(s) compared to the appraised/sale price of the property, whichever is lower), and debt-to-income ratios (the amount of monthly income compared to monthly debt service payments and other monthly payment obligations.

With respect to HARMS, Defendants underwrote loans without regard to the borrower's long-term financial circumstances, approving the loan based on the initial fixed rate without taking into account whether the borrower could afford the substantially higher payment that would inevitably be required during the remaining term of the loan.

With respect to HELOCs, Defendants underwrote and approved such loans based only on the borrower's ability to afford the interest-only payment during the initial draw period of the loan, rather than on the borrower's ability to afford the subsequent, fully amortized principal and interest payments.

As Defendants pushed to expand market share, they eased other basic underwriting standards. For example, higher loan-to-value (LTV) and combined loan-to-value (CLTV) ratios were allowed. Likewise, higher debt-to-income (DTI) ratios were allowed. At the same time that they eased underwriting standards the Defendants also were encouraging consumers to go further into debt in order to supply the very

lucrative aftermarket of mortgage backed securities.  The relaxed underwriting standards created the aftermarket supply they needed. As a result, the Defendants made it easy for the unwary consumer to take on more debt than he could afford by encouraging unsound financial practices, all the while knowing defaults would occur more and more frequently as the credit ratios of citizens reached the limit of the new relaxed underwriting standards.

Defendants knew, or in the exercise of reasonable care should have known, from its own underwriting guidelines industry standards that it was accumulating and selling/reselling risky loans that were likely to end up in default. However, as the pressure mounted to increase market share and originate more loans, Defendants began to grant "exceptions" even to its relaxed underwriting guidelines. Such was the environment that loan officers and underwriters were, from time to time, placed in the position of having to justify why they did not approve a loan that failed to meet underwriting criteria.

### Risk Layering

Defendants compromised its underwriting even further by risk layering, i.e. combining high risk loans with one or more relaxed underwriting standards.

Defendants knew, or in the exercise of reasonable care should have known, that layered risk would increase the likelihood of default. Among the risk layering Defendants engaged in were approving HARM loans with little to no down payment, little to no documentation, and high DTI/LTV/CLTV ratios. Despite such knowledge, Defendants combined these very risk factors in the loans it promoted to borrowers.

Loan officers and mortgage Agents aided and abetted this scheme by working closely with other mortgage Lenders/mortgage bankers to increase loan

originations, knowing or having reason to believe that Defendants and other mortgage Lenders/mortgage bankers with whom they did business ignored basic established underwriting standards and acted to mislead the borrower, all to the detriment of the borrower and the consumer of loan products..

Petitioner is informed and believe, and on that basis allege, that Defendants, and each of them, engaged and/or actively participated in, authorized, ratified, or had knowledge of, all of the business practices described above in paragraphs 30-42 of this Complaint

## *UNJUST ENRICHMENT*

Petitioner is informed and believes that each and all of the Defendants received a benefit at Petitioner's expense, including but not limited to the following: To the Agent, commissions, yield spread premiums, spurious fees and charges, and other "back end" payments in amounts to be proved at trial; To the originating Lender, commissions, incentive bonuses, resale premiums, surcharges and other "back end" payments in amounts to be proved at trial; To the investors, resale premiums, and high rates of return; To the servicers including EMS, servicing fees, percentages of payment proceeds, charges, and other "back end" payments in amounts to be proved at trial; To all participants, the expectation of future revenues from charges, penalties and fees paid by Petitioner when the unaffordable LOAN was foreclosed or refinanced.

By their misrepresentations, omissions and other wrongful acts alleged heretofore, Defendants, and each of them, were unjustly enriched at the expense of Petitioner, and Petitioner was unjustly deprived, and is entitled to restitution in the amount of $1,128,123.93

*CLAIM TO QUIET TITLE.*

Petitioner properly averred a claim to quiet title. Petitioner included both the street address, and the Assessor's Parcel Number for the property. Petitioner has set forth facts concerning the title interests of the subject property. Moreover, as shown above, Petitioner's claims for rescission and fraud are meritorious. As such, Petitioner's bases for quiet title are meritorious as well.

Defendants have no title, estate, lien, or interest in the Subject Property in that the purported power of sale contained in the Deed of Trust is of no force or effect because Defendants' security interest in the Subject Property has been rendered void and that the Defendants are not the holder in due course of the Promissory Note. Moreover, because Petitioner properly pled all Defendants' involvement in a fraudulent scheme, all Defendants are liable for the acts of its co-conspirators,

> "a Petitioner is entitled to damages from those Defendants who concur
> in the tortuous scheme with knowledge of its unlawful purpose."
> *Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 157 Cal. Rptr. 392,*
> *598 P.2d 45 (1979); Novartis Vaccines and Diagnostics, Inc. v. Stop*
> *Huntingdon Animal Cruelty USA, Inc., 143 Cal. App. 4th 1284, 50*
> *Cal. Rptr. 3d 27 (1st Dist. 2006); Kidron v. Movie Acquisition Corp.,*
> *40 Cal. App. 4th 1571, 47 Cal. Rptr. 2d 752 (2d Dist. 1995).*

*SUFFICIENCY OF PLEADING*

Petitioner has sufficiently pled that relief can be granted on each and every one of the Complaint's causes of action. A complaint should not be dismissed "unless it appears beyond doubt that the Petitioner can prove no set of facts in support of Petitioner claim which would entitle Petitioner to relief." *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* "All allegations of material fact in the complaint are

[Summary of pleading] - 25

taken as true and construed in the light most favorable to Petitioner." *Argabright v. United States, 35 F.3d 1476, 1479 (9th Cir. 1996).*

Attendant, the Complaint includes a "short, plain statement, of the basis for relief." Fed. Rule Civ. Proc. 8(a). The Complaint contains cognizable legal theories, sufficient facts to support cognizable legal theories, and seeks remedies to which Petitioner is entitled. *Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988); King v. California, 784 F.2d 910, 913 (9th Cir. 1986).* Moreover, the legal conclusions in the Complaint can and should be drawn from the facts alleged, and, in turn, the court should accept them as such. *Clegg v. Cult Awareness Network, 18 F.3d 752* (9th Cir, 1994). Lastly, Petitioner's complaint contains claims and has a probable validity of proving a "set of facts" in support of their claim entitling them to relief. *Housley v. U.S. (9th Cir. Nev. 1994) 35 F.3d 400, 401.* Therefore, relief as requested herein should be granted.

## CAUSES OF ACTION
### BREACH OF FIDUCIARY DUTY

Defendants Agent, appraiser, trustee, Lender, et al, and each of them, owed Petitioner a fiduciary duty of care with respect to the mortgage loan transactions and related title activities involving the Trust Property.

Defendants breached their duties to Petitioner by, *inter alia,* the conduct described above. Such breaches included, but were not limited to, ensuring their own and Petitioners' compliance with all applicable laws governing the loan transactions in which they were involved, including but not limited to, TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under.

Defendant's breaches of said duties were a direct and proximate cause of economic and non-economic harm and detriment to Petitioner(s).

[Summary of pleading] - 26

Petitioner did suffer economic, non-economic harm, and detriment as a result of such conduct, all to be shown according to proof at trial of this matter.

### CAUSE OF ACTION - NEGLIGENCE/NEGLIGENCE PER SE

Defendants owed a general duty of care with respect to Petitioners, particularly concerning their duty to properly perform due diligence as to the loans and related transactional issues described hereinabove.

In addition, Defendants owed a duty of care under TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under to, among other things, provide proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from marketing loans they knew or should have known that borrowers could not afford or maintain, and to avoid paying undue compensation such as "yield spread premiums" to mortgage Agents and loan officers.

Defendants knew or in the exercise of reasonable care should have known, that the loan transactions involving Petitioner and other persons similarly situated were defective, unlawful, violative of federal and state laws and regulations, and would subject Petitioner to economic and non-economic harm and other detriment.

Petitioner is among the class of persons that TILA, HOEPA, RESPA and the Regulations X and Z promulgated there under were intended and designed to protect, and the conduct alleged against Defendants is the type of conduct and harm which the referenced statutes and regulations were designed to deter.

As a direct and proximate result of Defendant's negligence, Petitioner suffered economic and non-economic harm in an amount to be shown according to proof at trial.

1
2
3

### AGENT: COMMON LAW FRAUD

4  If any Agents' misrepresentations made herein were not intentional, said
5  misrepresentations were negligent. When the Agents made the representations
6  alleged herein, he/she/it had no reasonable ground for believing them to be true.

7  Agents made these representations with the intention of inducing Petitioner to act
8  in reliance on these representations in the manner hereafter alleged, or with the
9  expectation that Petitioner would so act.

10  Petitioner is informed and believes that Agent et al, facilitated, aided and abetted
11  various Agents in their negligent misrepresentation, and that various Agents were
12  negligent in not implementing procedures such as underwriting standards oversight
13  that would have prevented various Agents from facilitating the irresponsible and
14  wrongful misrepresentations of various Agents to Defendants.

15  Petitioner is informed and believes that Agent acted in concert and collusion with
16  others named herein in promulgating false representations to cause Petitioner to
17  enter into the LOAN without knowledge or understanding of the terms thereof.

18  As a proximate result of the negligent misrepresentations of Agents as herein
19  alleged, the Petitioner sustained damages, including monetary loss, emotional
20  distress, loss of credit, loss of opportunities, attorney fees and costs, and other
21  damages to be determined at trial. As a proximate result of Agents' breach of duty
22  and all other actions as alleged herein, Defendants has suffered severe emotional
23  distress, mental anguish, harm, humiliation, embarrassment, and mental and
24  physical pain and anguish, all to Petitioner's damage in an amount to be
25  established at trial.

26
27
28

*PETITIONER PROPERLY AVERRED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.*

Petitioner properly pled Defendants violated the breach of implied covenant of good faith and fair dealing. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989);* Rest.2d Contracts § 205. A mortgage Agent has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773.* Further, In *Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917,* the court stated:

In the area of insurance contracts the covenant of good faith and fair dealing has taken on a particular significance, in part because of the special relationship between the insurer and the insured. The insurer, when determining whether to settle a claim, must give at least as much consideration to the welfare of its insured as it gives to its own interests. . . The standard is premised on the insurer's obligation to protect the insured's interests . . . *Id. at 937.*

Likewise, there is a special relationship between an Agent and borrower. "A person who provides Agency services to a borrower in a covered loan transaction by soliciting Lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the Agent may be acting as an Agent for . . . The fiduciary duty of the Agent is to deal with the consumer in *good faith.* If the *Agent knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not* to place them in that loan." (California Department of Real Estate, *Section 8: Fiduciary Responsibility,* www.dre.ca.gov). [*Emphasis Added*].

All Defendants, willfully breached their implied covenant of good faith and fair dealing with Petitioner when Defendants: (1) Failed to provide all of the proper disclosures; (2) Failed to provide accurate Right to Cancel Notices; (3) Placed Petitioner into Petitioner's current loan product without regard for other more affordable products; (4) Placed Petitioner into a loan without following proper underwriting standards; (5) Failed to disclose to Petitioner that Petitioner was going to default because of the loan being unaffordable; (6) Failed to perform valid and /or properly documented substitutions and assignments so that Petitioner could ascertain Petitioner rights and duties; and (7) Failed to respond in good faith to Petitioner's request for documentation of the servicing of Petitioner's loan and the existence and content of relevant documents. Additionally, Defendants breached their implied covenant of good faith and fair dealing with Petitioner when Defendants initiated foreclosure proceedings even without the right under an alleged power of sale because the purported assignment was not recorded and by willfully and knowingly financially profiting from their malfeasance. Therefore, due to the special relationship inherent in a real estate transaction between Agent and borrower, *and* all Defendants' participation in the conspiracy, the Motion to Dismiss should be denied.

### *CAUSE OF ACTION VIOLATION OF TRUTH IN LENDING ACT 15 U.S.C. §1601 ET SEQ*

Petitioner hereby incorporates by reference, re-pleads and re-alleges each and every allegation contained in all of the paragraphs of the General Allegations and Facts Common to All Causes of Action as though the same were set forth herein.

Petitioner is informed and believes that Defendant's violation of the provisions of law rendered the credit transaction null and void, invalidates Defendant's claimed

interest in the Subject Property, and entitles Petitioner to damages as proven at trial.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The conduct committed by Defendants, driven as it was by profit at the expense of increasingly highly leveraged and vulnerable consumers who placed their faith and trust in the superior knowledge and position of Defendants, was extreme and outrageous and not to be tolerated by civilized society.

Defendants either knew that their conduct would cause Petitioner to suffer severe emotional distress, or acted in conscious and/or reckless disregard of the probability that such distress would occur.

Petitioner did in fact suffer severe emotional distress as an actual and proximate result of the conduct of Defendants as described hereinabove.

As a result of such severe emotional distress, Petitioner suffered economic and non economic harm and detriment, all to be shown according to proof at trial of this matter.

Petitioner demands that Defendants provide Petitioner with release of lien on the lien signed by Petitioner and secure to Petitioner quite title;

Petitioner demands Defendants disgorge themselves of all enrichment received from Petitioner as payments to Defendants based on the fraudulently secured promissory note in an amount to be calculated by Defendants and verified to Petitioner;

Petitioner further demands that Defendants pay to Petitioner an amount equal to treble the amount Defendants intended to defraud Petitioner of which amount Petitioner calculated to be equal to $3,384,371.79

1
2
3
4
5
6

## PRAYER

7  WHEREFORE, Petitioner prays for judgment against the named Defendants, and
8  each of them, as follows:

9        For an emergency restraining order enjoining lender and any successor in
10       interest from foreclosing on Petitioner's Property pending adjudication of
11       Petitioner's claims set forth herein;

12       For a permanent injunction enjoining Defendants from engaging in the
13       fraudulent, deceptive, predatory and negligent acts and practices alleged
14       herein;

15       For quiet title to Property;

16       For rescission of the loan contract and restitution by Defendants to Petitioner
17       according to proof at trial;

18       For disgorgement of all amounts wrongfully acquired by Defendants
19       according to proof at trial;

20       For actual monetary damages in the amount $1,128,123.93;

21       For pain and suffering due to extreme mental anguish in an amount to be
22       determined at trial.

23       For pre-judgment and post-judgment interest according to proof at trial;

24
25       For punitive damages according to proof at trial in an amount equal to
         $3,384,371.79.

26
27       For attorney's fees and costs as provided by statute; and,

[Summary of pleading] - 32

28

For such other relief as the Court deems just and proper.

Respectfully Submitted,

Christian Silver

## PROOF OF SERVICE

I, Nancy C. Wheeler, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On  September 16, 2010, I served the within **NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;  MOTION FOR A MORE DEFINITE STATEMENT; AND MOTION TO STRIKE PUNITIVE DAMAGES, [(FRCP RULE 12(b)(6), (e) and (f)]**, on all interested parties in this action as follows:

[x]    by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

**Stephen Foos**
3115 Acanto Place
Redding, CA 96003
(530) 710-2732
Plaintiff In Pro Per

[ X ]    (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]    (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]    (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[ ]    (BY OVERNIGHT EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by OverNight Express with the delivery fees provided for.

[ X ]    (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.
Executed on September 16, 2010, at Newport Beach, California.

Nancy C. Wheeler